J. H. CLOPTON et ux. v. J. M. MATHENY.

1. HUSBAND AND WIFE—LIABILITY OF WIFE FOR SUPPLIES FOR HER PLANTATION.— Contracts for " supplies" for the plantation of a wife, so as to bind her separate estate, may be made by the husband and wife, or by either of them, without the other's consent, and this may apply to the purchase of a cotton gin-stand, purchased by the husband without his wife's consent.

2. SAME.—In only a single instance can the husband impose a charge upon the estate without the wife's consent, and that is where her lands are devoted to agriculture. In such case, without consulting her, he may burden the estate with a charge for those things necessary to the production of crops, and for its management; and nothing can exempt the estate from this liability except a waiver of it by the creditor.

3. SAME—ACCEPTANCE OF HUSBAND'S NOTE FOR WIFE'S DEBT NO DISCHARGE OF THE WIFE, EXCEPT SO AGREED.—The acceptance by a creditor of the husband's note for the wife's liability, no release of the wife, except it be so agreed. Citing Guion and wife v. Doherty, 43 Miss. 554.

4. SAME—AGENCY OF HUSBAND FOR WIFE—LIMITATION.—Whether the statute means to put the husband in the wife's stead in all that class of contracts,‛in which his power to bind her estate is concurrent with her own, *Quære.* If it does, the wife cannot set up the bar of the statute if, before it has attached, as in the case at bar, the husband procures an extension of the debt by his promise to pay in the future.

5. LIMITATION—SUSPENSION OF STATUTE DURING THE WAR.—In December, 1862, the statute of limitation was suspended by the legislature, and was not permitted to commence running again until the 2d of April, 1867. Wherefore, an action brought January, 1868, on a cause of action that arose January 1, 1861, was not barred.

APPEAL from the chancery court of Monroe county. WHITFIELD, Chancellor.

A full statement of the case is given in the opinion of the court.

*Sale & Dowd,* for appellants.

If the wife is liable for the debt, and the husband was her agent in the purchase, then the decree is wrong as against the husband, and he is in no way liable for it. Bacon v. Beavan et al. 44 Miss. 295, 296.

We shall show hereafter that this property of the wife was not held under the Woman's Law of Mississippi, but by the special provisions of the will. For the present, we will show that, if held under the Woman's Law of Mississippi of 1857, there is no liability fixed on the wife. Code of 1857, p. 336, art. 25, provides that all contracts made by the wife, or by the husband with her consent, for work and labor done, or for improvements on the estate, may be enforced against her separate property. A gin-stand is a fixture of the freehold, and may be classed as an improvement, but it is doubtful. It is too well settled to require more than a

reference to the adjudicated cases, that, to subject the property of the wife, the appellee must bring himself precisely within the provisions of the act. Davis v. Foy, 7 S. & M. 73–75. She is not liable for buildings put on her lands. Selph v. Howland, 23 Miss. 226; Robertson v. Bruner, 24 ib. 243; Whitworth v. Carter, 43 ib. 71, 72. The proof does not bring the appellee's case within the rule.

The sole credit was given to John H. Clopton, the husband. All the witnesses, both for the appellants and appellee, agree on this point: that the wife never gave her consent, or made the husband her agent. It is certainly competent for a solvent husband to purchase property and give to· his wife, or contract for improvements on his own credit. The credit must be given to the wife or her estate at the time. In the case of Guion v. Doherty, 43 Miss. 551, the court affirm the charge of the circuit judge, and say that, if the husband bought the goods on his own credit, and gave his individual note for them, the wife is not liable, although for the benefit of her property. The credit must have been originally given to the wife, and the vendors and makers (of the gin), or the appellee, treated with her and looked to her for payment. The central idea is, to whom was the crdit given? On page 552, the court say: "The only question is, does the evidence prove, or tend to prove, that the goods (gin) were for the use of the wife's plantation, and purchased on her credit?"

In this case it is not pretended that there is any proof that the credit was given to the wife, but the contrary directly proven. The husband had the wife's money in hand at the time of the purchase; the gin makers thought proper to sell on the personal credit of the husband; now, when the husband is bankrupt, must the wife lose it?

The title to the plantation on which the gin was

used is shown by the will to be the joint property of the wife and the children of appellants, and not the separate -property of the wife. It was not bought or used for the separate property of the wife alone. If there is any equity in the case it is against all, and the owners of one-half the estate are not made parties to the bill.

It is not shown in the bill or proof that any property of any specific description is owned by the wife. In a late case it was determined that to subject the wife's property is a proceeding *in rem* and not *in personam.* No judgment can be rendered against her personally, and especially when she does not make the contract. How can the sheriff determine what is the separate property of the wife? Bank of Louisiana v. Williams and wife, 46 Miss.

It is settled that when a note is given for an account, and it is fairly inferable from the circumstances that it was intended by the parties to be in settlement, the account is merged in the note. John Clopton says expressly, that the account was receipted in full, and this was not denied by appellee. This is fixed by the fact that suit was brought on the note and not on the account, and the foundation of this action is the judgment founded on that note. Appellee has no equity whatever, except what he derives as against John Colpton, by the payment of the judgment as surety. But it appears he sold for value, and it is doubtful even if this equity exists. If Mrs. Clopton pays this money, John Clopton is still liable on the judgment.

In the suit at law, the plaintiff declares on the note and not on the account, and this brings the case directly within the rule in Slocum v. Holmes, 1 How. (Miss.) 144; Mayes v. Oglesby, 6 ib. 50; Toby v. Barber, 5 Johns. 68; John v. Weed, 9 ib. 310; Guion v. Doherty, 43 Miss. 554–55.

There is no doubt that both note and account for

the gin were merged in the judgment.   The latter is a higher security.  ·Story on Prom. Notes, § 407; Chitty on Cont. 681, and authorities cited; 43 Miss. 554.

But the pleadings and proofs show Mrs. Clopton does not hold the property under the statute, but under the will of her father, John Abbott.   After giving her, in the sixth clause, the property, he does not stop.   This would have left the property subject to the woman's law, and to the contracts of the husband made in conformity thereto.   But, knowing the statute, testator adds: "All of which I give to her, and the heirs of her body forever; not to be liable for the debts or contracts of her husband, or any future husband."   He was unwilling that the power to incumber the estate should be exercised as provided by statute. He had the unquestioned right to do so.   At common law these words often created a separate estate.   Of course, it will not be pretended that the statute intended to take away the power of the father to impose limitations and conditions on the estate devised to his married daughter; on the contrary, it is uniformly held, that a married woman may incumber and convey her property in the manner prescribed by the instrument conveying it to her, and she is restricted to that method.   If it (the instrument) imposes no limitation or restriction, then the statute prevails. The case of Doty v. Mitchell, 9 S. & M. 436, 447, settles this doctrine on a similar state of facts.   It is supported by the following authorities. The common law doctrine is exhausted (Morgan v. Elam, 4 Yerg. 375), and is cited and confirmed as applicable under our statute in 9 S. &. M. 447; David v. Fisk, 9 ib. 151; Berry v. Bland, 7 ib. 83.   In Whitworth v. Carter, the ablest construction and analysis of the woman's law yet delivered, this doctrine is plainly asserted (43 Miss. 71), and, if possible, more strongly in the case of the Bank of Louisiana v. Williams and wife, 46 Miss.

By the 6th and 7th clauses of the will of John Abbott, one-half the plantation is given Mrs. Clopton and one-half to her children, making them tenants in common. The wife and the husband, as guardian for the children, hold the property in trust to execute the trusts of the will, that is, that the plantation shall be cultivated by them, and the proceeds to be divided between the wife and children, and this to be done until the children become of age.

If the gin was bought by the husband, as trustee for the children, the wife is not liable.

If he bought it for the use of all, then it is void, for the will does not authorize the trustee to buy on credit; but if it did, then the whole estate is liable. The children have an undivided half interest in every acre of the land.

It may be, on a settlement of the accounts, the mother owes them largely, enough to cover the estate.

No reference was made to the master to take and state an account between the parties, but a decree was rendered for the payment of the judgment and interest. It may be questioned whether it is irregular in this case, but it is submitted to the court. Beville v. McIntosh, 41 Miss. 516; Freeman v. Ledbetter, 43 ib. 165.

*Reuben Davis,* for appellee.

The first question which I shall present for the consideration of the court is, how far the separate property of a married woman may be made liable by contracts made by the husband alone, and without her consent, for supplies for her plantation.

This question, I believe, has not been expressly adjudicated by this court, and therefore remains an open question.

Without argument or reference to other authority, I may refer the court to the 25th article, Revised Code, page 336, as decisive of this question. It is this: "And

all contracts made by the husband and wife, or by either of them, for supplies for the plantation of the wife may be enforced, and satisfaction had out of her separate estate."

This article gives to the husband alone full power and authority to bind by contract the property of the wife for supplies for the plantation of the wife. The act contains no limitation upon the power, nor does it require that the contract shall be made in the name of the wife, or with her consent. If it is not necessary, as it is not, that the contract should be made in the name of the wife, then a contract for plantation supplies, made by the husband, and in his own name, may be enforced against her separate estate, as well as one made in her name. In seeking to enforce a contract made by the husband in his own name, it would only be necessary to show that the contract was for plantation supplies for his wife's property, and that the article purchased was necessary for plantation use. Necessity is the only limitation upon his power.

Now, the bill in this case sets out a contract, made by the husband, for a gin-stand for the use of the plantation of Mrs. Clopton, and the answer of defendants admits its use in ginning the cotton raised on the plantation, and that it was necessary, and that, in the purchase, he acted as agent for his wife, and the bill so charges the fact to be. Can, then, there be any question as to the right of complainant to have the separate estate of Mrs. Clopton made liable for the said debt? It may be insisted that a gin-stand is not embraced in the word " supplies." The case of Roberlmer v. Ward and wife, 12 S. & M. 490, is decisive of this question. The court say: " A plantation could scarcely be cultivated without work-horses or mules, and they are, no doubt, to be included under the term 'supplies for plantation use' in the statute." If a horse is embraced in the word " supplies," certainly a gin-stand would be.

It may be insisted that the husband is not the agent of his wife. Generally, this may be true. But the statute makes him her agent for this and other purposes, and he can bind her separate estate as such. Rev. Code, p. 336, art. 25; Atwood v. Meredith et al. 37 Miss. 641.

It will be contended that, as John H. Clopton closed the account by giving his individual note, Mrs. Clopton's liability was lost, and her separate estate cannot now be made liable. This position is in violation of the authorities upon this subject. In the case of Wyllie and others v. Collins & Co., 9 Ga. 231, 232, this very question was raised, and the court held the separate estate of the wife liable. The facts were these : Mrs. Wyllie was the owner of a large estate in her own right; Wyllie purchased, for the use of her plantation, a gin-stand, and gave his individual note; was sued, and judgment obtained against him, and the execution was returned *nulla bona;* Collins then filed his bill to subject the separate estate of the wife, and the court decied that her estate was liable. Thus it will be seen that the facts of the case now under consideration and the one referred to are in every particular the same, whilst our statute makes our case stronger for complainant than the Georgia case. The case of Carter v. Everleigh and wife, 4 Dess. Eq. 19, arises also out of the purchase by husband of a gin-stand for the use of the wife. See also, 1 Hill Ch. 228; 4 Dess. Eq. 591; 1 McCord Ch. 267.

The case of Guion et ux. v. Doherty, 43 Miss. 538, is decisive of this case; the facts are very much the same, varying only in the fact that the articles purchased by Guion included both plantation supplies and family supplies. Now, the act of the legislature, article 25, Rev. Code, p. 336, makes a distinction in the power of the husband to bind by contract the wife's separate estate. Where plantation supplies are pur-

chased, the husband need not have the consent of his wife; when family supplies are purchased he must have her consent, otherwise he cannot bind her estate. Then, in the case of Guion, many, and perhaps most, of the articles purchased were for family consumption; the court, therefore, did right in saying that the question of consent was one for the jury. But this the court would not have said if the note embraced articles only for plantation supplies.

But it is insisted by counsel that the account was merged in and satisfied by the note of Clopton. In the case of Guion, the court say, not unless it was taken absolutely in satisfaction. Now, Matheny swears positively that it was not so taken, but simply to oblige Clopton, who said it should be paid in a few days. O'Conner, who wrote the note, says it was not intended to be a satisfaction of the account and release of the liability of Mrs. Clopton, but only to close the account at Clopton's request.

Dr. John L. Tindall swears that the universal custom at his gin-shop was to require the gin-stand to be paid for when the cotton crop was sold, and that this was the understanding and expectation in the case of the sale of this gin-stand to Clopton, and in this he is uncontradicted. John H. Clopton and Mrs. Sarah E. Clopton both swear he had the whole control and management of his wife's plantation, purchased what was necessary, raised the crop, sold the cotton, and paid the debts, and that this indulgence was extended to him in the most unlimited manner. If this was a case where the agency was required to be shown, we would want no other proof than that of Clopton himself.

SIMRALL, J.:

J. H. Clopton purchased, in 1860, for the use of his wife's plantation, a gin-stand, to be paid for out of the cotton crop of that year. Bickett and Tindall, from

whom the purchase was made, transferred the debt to J. M. Matheny. In 1865, Clopton gave his note for the account to Matheny, the complainant, who indorsed it to Miffleton & Odeneal.

The indorsees sued the maker and the indorser, and recovered judgment against both. Clopton was pursued to insolvency by the return of *nulla bona* on the execution. Thereupon, Matheny paid the recovery, and brought this suit in equity to obtain satisfaction from Mrs. Clopton, on the ground that she was the owner of separate property; that the gin-stand was purchased for the use of her plantation, and was so actually employed.

The answer of Mrs. Clopton admits her ownership of the plantation, but denies knowledge of the purchase by the husband or his agency for her, or the use of the gin-stand on her land. It is satisfactorily proved, however, that the gin-stand was set up and used on her plantation. The argument is made by the appellants' counsel, that the proofs show that the children of Mrs. Clopton have also an interest in the plantation, and if the property be held liable, the burden should be proportionately distributed between herself and the children. It may be a sufficient answer to that suggestion, to say that Mrs. Clopton sets up no such defense, and nowhere do the parties intimate in the pleadings that there is such joint ownership, and that there should be no such apportionment of the debt. It is sufficient to dispose of this objection, that the proof clearly shows that the wife had the control and exclusive management of the property through her husband, as her plantation, taking and appropriating its crops and income. An analysis of the 25th art., p. 336, Code of 1857, discovers that certain contracts, that bind the separate estate of the wife, may be made by husband and wife, or by either of them. Other contracts must be made by the wife, or by the husband with her con-

sent.   Of the latter class, are those which provide for
the comfort, convenience and maintenance of the
family; education of the children; for erections and
improvements on her property, and work, labor and
services for the benefit and improvement thereof.

Of the former class are supplies for the plantation,
maintenance of the laborers, the employment of an
agent or overseer.   For these things the husband is
made competent to incur obligations to be discharged
out of the separate estate.   The obligation is incurred
by the joint contract of husband and wife, or by the
separate act of either of them.

Contracts falling within the other classification must
be incurred by the wife; if not made directly by her
but by the husband, they impose no liability on her
property, unless the husband had her consent to act.

Contracts, then, for " supplies" of the wife's planta-
tion, may be made by either or both.   If the " sup-
plies" are necessary, the husband may contract for
them, and satisfaction may be had out of the wife's
property.   If the real estate of the wife is used for the
production of cotton, a gin-stand is a necessary article
for its outfit—a " supply" in the same sense as negroes,
plows, or work animals.   Robertson v. Ward, 12 S. & M.
490.   The entire statute, embracing the law respecting
" the separate property of married women," is remark-
ably terse, precise and definite in the use of words.   It
carefully guards the estate from the imprudent control
of the husband, leaving, for the most part, the property
to be dealt with and managed by the wife, as far as
she was competent.   In only a single instance can the
husband impose a charge upon the estate without the
wife's consent, and that is where her lands are devoted
to agriculture; he is entrusted with authority to pro-
vide those things necessary to the production of crops,
and without consulting her may burden the property
with a charge for such necessary " supplies," and its

management. The estate is primarily devoted to the payment, and is bound whether the husband be solvent or insolvent. Nothing would exempt it except a waiver of its liability. Whether the clause of the statute under consideration be interpreted as conferring a power on the husband to create a charge on the estate, or as constituting him an agent of the wife to make such contracts, the result is the same. In either event his contract, within its terms and objects, affects her property.

We have several times considered the effect of taking a promissory note for an antecedent debt, whether it shall be treated as an extinguishment or merger, or not. We are content with the principles stated in Guion and wife v. Doherty, 43 Miss. 554, which have been subseqently followed. There, as here, the note of the husband was accepted by the creditor. We held, however, that, unless taken in payment and discharge of the wife's estate—agreed to be so taken—so that the creditor took the risk of its payment, the wife's estate was not discharged.

Upon the purchase of the gin-stand for the wife's plantation, her property became immediately liable, and so continued, notwithstanding the charge in the books of Messrs. Beckett & Tindall was made against Mr. Clopton. The acceptance of the husband's note did not release the wife's estate, unless it was agreed to be taken in discharge of it.

It is the dictate of natural equity, that the trust estate should be liable for all things necessary for its support and productiveness. Indeed, without the benefit of such a principle, its enjoyment and preservation might be greatly impeded; and this, because the *cestui que trust* may be under legal disabilities.

The leading and well-considered case of Carter v. Everleigh and wife, 4 Dess. Eq. 19, is very similar to this. There, the wife's property was held to be bound,

although the husband gave his own note for the gin-stand, and the seller, believing him to be the owner of the plantation, had sued upon the note and pursued him to insolvency. In Montgomery v. Everleigh et al., 1 McCord Ch. 267, the complainant had indorsed a promissory note given by the son for corn supplied for the use of the slaves of the *cestui que trust*, his mother, on her plantation, and had been compelled to pay it. It was held that the indorser was entitled to re-imbursement out of the trust property. A contrary doctrine would be destructive, in many instances, of trust estates, as it would take away all credit, however emergent the need.

These propositions are sustained by authority, and are reasonable and just in themselves: First. The estate of Mrs. Clopton, being the recipient of the benefit, is the primary debtor, responsible in the first instance, and ought to pay the debt. The complainant, assignee of Beckett and Tindall, although he transferred the note taken from the husband, having been compelled to pay it to his indorsee, is remitted to his original claim on Mrs. Clopton, and should be allowed to collect out of the estate, where ultimate responsibility belongs. That remedy should be afforded to him, unless (as we have said) he took the husband's note in absolute payment and discharge of Mrs. Clopton, agreeing to look to the note as the only means of payment, or, in the second place, unless the complainant's claim against Mrs. Clopton has been barred by the statute of limitations.

We do not think that the evidence in this case is sufficient to withdraw it from the control of the rule stated in Guion and wife v. Doherty, 43 Miss., that the note, either of the debtor, or of a third person, is not a payment or extinguishment of an antecedent debt unless received expressly as payment. That is pro-

nounced to be the settled doctrine in Wyllie v. Collins & Co., 9 Ga. 240, referring to many of the cases.

It remains to be considered whether the claim is barred. The purchase of the gin-stand was made in 1860, the precise time not fixed. It was proved by one of the sellers, Tindall, that the rule or custom was to be paid out of the cotton crop of the year.

In 1865, Mr. Clopton gave his note for the account to the complainant, which had been assigned to him by Beckett and Tindall, in payment of their indebtedness to him. Complainant indorsed the note to Miffleton and Odeneal, who brought suit against the maker and indorser to October term, 1866. Judgment was recovered against both at the May term, 1867. What influence shall be given to the fact that Clopton gave his note in 1865, and to his connection and agency in the transaction generally?

If the better interpretation of the married woman's law be (as we think it is), that the husband is constituted an " agent " by the statute to provide " supplies " for the wife's plantation, it becomes important to fix the extent of his authority. The text is, " all. contracts made for supplies." Suppose the contract be to pay four years after delivery, or upon other terms as to time, would the wife be heard to say that as to her the debt was barred after three years? The words are of broader meaning than " that the husband may purchase ' supplies' " : " all contracts," implying that it is referred to discretion or necessity, as to the market price and time of payment. If the husband give his note, payable one, two or four years hence, is not that a valid contract within the statute, as much so as if the wife had made her note of like tenor? Whatever contract the wife may make for plantation necessaries, the husband may make under the statute. If the husband, by virtue of his statutory agency, buys without the

wife's knowledge, she is bound; so, too, she is bound by his contract as to price, unless very unreasonable and extravagant (so as to amount to a fraud upon her rights); so, also, as to time.  If the statute meant to put the husband in the wife's stead, as to this class of contracts, we are inclined to think that in this case, where the husband was intrusted with entire control of the property and its proceeds, using both very much at his pleasure, exclusively in the habit of contracting for " supplies," the wife cannot set up the bar of the statute, if, before it has attached, as in this case, he procures an extension of the debt upon his promise to pay in the future.

But, whether correct in this view or not, and upon that it is not necessary to express an authoritative opinion, we do not think that the claim is barred on the theory of the appellants, as to the statute of limitations.   The testimony of Tindall is, that the rule of his manufacturing company was to sell gin-stands payable out of the first crop ginned upon it.   Clopton says, in his deposition, that the gin was bought some time in 1861.   The bill states the date in 1860.   Assuming the latter as the time, and that the debt would be due 1st January, 1861, when would be the close of the ginning season, and there elapsed from that time until December, 1862, when the legislature passed the suspension act, one year and eleven months, the limitation began to run again 2d April, 1867.   The day upon which suit was brought (i. e., bill filed) is not shown in the record, but it does appear that the subpœna was issued 28th January, 1868, which could not go out until after bill was filed.   From the 2d April, 1867, to 28th January, 1868, is nine months; add that to the time which elapsed before the statute was suspended, and we have two years and eight months, so that the three years set up as a bar, computing from the 1st of January, 1861, until this suit was brought,

had not expired. That relieves the case of all difficulty on the score of the statute of limitations.

John H. Clopton set up his discharge under the bankrupt law, and exhibited his certificate of discharge. It was error to render a decree for the debt against him.

We are of the opinion, that as the gin-stand was purchased for and used upon the plantation of Mrs. Clopton, she, through her separate estate, was the real primary debtor, and the complainant, the assignee of the original debt, is entitled to satisfaction for it out of her separate estate.

So much of the decree as orders and directs payment by Mr. Clopton is reversed. The balance of the decree against Mrs. Clopton is affirmed.