EVAN COOK, EXECUTOR, ETC. *v.* B. T. LIGON ET AL.

1. SUPPLIES FOR PLANTATION OF WIFE. *When separate estate bound therefor, under* § 1780 *Code* 1871.

   A wife's separate estate is bound by the purchase of supplies for her plantation, whether bought by herself, or by her husband with or without her consent.

2. SAME. *What will discharge wife's separate estate.*

   From such liability nothing will discharge the wife's estate save an express contract that it shall be released, or something equivalent thereto. Neither acceptance of the husband's note, nor recovery of judgment thereon, will have that effect.

3. SAME.  *Liability of husband.*

The husband, in purchasing supplies for his wife's plantation, acts as her agent appointed by the statute, and can only be held to a personal liability by such acts of assumption as would bind an ordinary agent when acting for his principal.

4. SAME.  *Meaning of "plantation supplies."*

What description of articles are embraced within the term "plantation supplies" was considered and explained in *Herman* v. *Perkins*, 52 Miss. 813.

5. SAME.  *Suit on contract.   Husband joined for conformity.*

In suits on such contracts the husband must be joined with his wife for conformity, but no judgment should be rendered against him.

6. FAMILY SUPPLIES.   NECESSARIES AND THE LIKE.   *Liability of husband where wife liable, under* § 1780 *Code* 1871.

As to family supplies and the other classes of contracts enumerated in § 1780 Code 1871, if on the facts the law imposes a liability on the estate of the wife, the husband can only be held upon an express contract on his part.

7. SAME.  *How wife may become bound.*

On such contracts the wife may be bound either by her own acts, or by those of her husband to which she has consented.  But she will not be bound, even where she has herself made the contract, unless it was the understanding, express or implied, that it was based on her credit.

8. SAME.  *How wife's consent given.*

In such cases the wife may contract, or give assent to the contracts of her husband, as if she were unmarried, and her consent may be implied.

9. SAME.  *Presumption as to liability.*

Where the husband has property or income of his own, the *prima facie* presumption in such cases is that credit was given to him; but where he has no property or income, and is engaged solely in managing his wife's affairs, a presumption may arise that the credit was to her.

10. EVIDENCE.  *Objection to.   When made.*

Objections to testimony, not made in the court below, except in the motion for a new trial, will not be noticed by the Supreme Court.

11. SUPREME COURT.   *Practice.   Judgment reversed in part.*

Where the declaration asserts a joint liability against husband and wife, and the proof shows a liability by the wife alone, if the court below renders a joint judgment against them, the act of March 24, 1876 (Acts 1876, pp. 35, 36), authorizes the Supreme Court to affirm as to the wife, and reverse as to the husband.   The act embraces any joint contract, whether of copartners or other persons.

ERROR to the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

*T. J. & F. A. R. Wharton,* for the plaintiff in error.

1. To charge a married woman upon a contract under the statute, the plaintiff must show that it was made for the purposes expressed in the statute. *Robertson* v. *Bruner,* 24 Miss. 244. The record must show the concurrence of all the facts required by the statute, to make the promise binding on the wife. 43 Miss. 538, 551, 552, 686. Generally a married woman is incapable of contracting, and her promises are, *prima facie,* void. 41 Miss. 114. Our statutes as to her separate property and her power to contract are *enabling.* All contracts by her are void, unless clearly within the terms of those statutes. 7 S. & M. 64, 68; 43 Miss. 61, 679; 44 Miss. 430; 51 Miss. 378; 49 Miss. 709; 50 Miss. 56, 531.

In *Clopton* v. *Matheny,* 48 Miss. 285, 295, so strongly relied on by the defendants in error, the court said, "*In only a single* instance can the husband impose a charge upon the estate without the wife's consent, and that is where her lands are devoted to agriculture." Then, "without consulting her, he may burden the property with a charge for such necessary supplies, and its management;" and, in enumerating those things for which the husband may bind the wife's estate, without her consent, said, of that class "are supplies for the plantation, maintenance of the laborers, employment of an agent or overseer." The court then said of the statute, "It carefully guards the estate from the imprudent control of the husband, leaving, for the most part, the property to be dealt with and managed by the wife, as far as she is competent." As to what acts of the wife amount to acquiescence in the acts of the husband, see 1 S. & M. 48.

Our position is, that while the wife or her husband may bind her estate, within the rules, and the statutes on that subject, as to supplies for plantation, maintenance of laborers, employment of overseer and the like, the plaintiff must aver in his declaration, and prove, that the purchases were of that character, and that it was known and understood that they were made on the credit of her separate estate. The proof, in this case, falls short of that. The husband had dealt with

the defendants in error for many years prior to the account sued on, and the credit was given solely to him; and nothing was said by the husband, wife or defendants in error indicating a change of dealing. The accounts sued on in this case are made out against him.

2. The judgment must be reversed, if only because it was error to enter judgment against the husband individually. The wife was alive when suit was brought, dead when judgment was rendered, and cause revived in Evan Cook's name as executor. They were sued jointly as husband and wife, not for *conformity*. *Mallett* v. *Parham*, 52 Miss. 921, is cited on the other side. There, the husband was joined in the action, and it was so stated in the declaration, "for *conformity* merely." Here the judgment was entered strictly according to the prayer of the declaration, and was a *personal* judgment against both. We submit that the judgment cannot in this, as in that case, be reversed and the judgment entered here, which should have been entered in the lower court against the wife, for the amount of the debt to be levied of her separate property.

*Shelton & Shelton*, for the defendants in error.

1. The married woman's law is the law of this case. As to the supplies for the plantation of the wife, there is no question of her liability. Code 1871, § 1780; 48 Miss. 285. As to family supplies, necessaries, wearing-apparel of herself and children, and the like, she is liable, so far as they were purchased by her, or by her husband with her consent. Code 1871, § 1780. The statute prescribing no *mode* of making either *purchases* or *consent*, and no mode by which either shall be proved, she may execute the powers conferred on her as if she were a single woman. The same rule applies to personal property, and to other powers contained in the statute. 36 Miss. 554, 558; 23 Miss. 280; 27 Miss. 335, 343; 47 Miss. 603. Without such a construction, the powers contained in the statute would be inoperative, for one mode of executing them would be as objectionable as another; none would be authorized by law.

In this case, however, it is not a power to contract that we have to show, but only *consent*, which can be established not only by direct evidence of express consent, but by proving facts

which disclose knowledge, participation, acquiescence and use. A married woman can no more than a *feme sole* acquiesce in a transaction which she has the *power* to make good *by her consent*, take the benefit of the husband's act, and then deny that she consented. The principle was applied to married women in the cases cited, and is recognized in the following : 2 Greene (Iowa), 435; 5 R. I. 380; 55 Penn. St. 386; 24 Iowa, 418; 4 Phila. 10; 47 Mo. 495; 46 Ill. 18; 13 Ohio, 131; 7 Ind. 125; 35 Ind. 353. The principle is, that a married woman can no more take advantage of her own fraud than if she were sole.

2. The objections to the testimony were made too late. *Dyson* v. *Baker, ante,* 24.

3. Should the court think the judgment against Evan Cook erroneous, they will reverse, and proceed to render such judgment here against Mrs. Cook's estate as the court below should have rendered. *Mallett* v. *Parham,* 52 Miss. 921.

CHALMERS, J., delivered the opinion of the court.

The suit was brought against both husband and wife on an open account for goods, wares and merchandise sold and delivered. The wife died pending suit, and the husband having qualified as her executor, it was revived against him, and judgment for the whole amount eventually rendered against him, both in his individual and in his representative capacity. Many of the items in the account are evidently for plantation supplies, many are plainly family supplies, and a large number could fairly be classed under either designation; and their true classification, therefore, would depend on the uses and purposes for which they were purchased and to which they were applied. The articles were bought indiscriminately by the husband, the wife and their daughter. They were carried home, and there used by the family or applied to the uses of the plantation. The account was opened by the husband and kept in his name, nor was there ever any conversation between the wife and the merchants with reference to her liability. The husband was insolvent, with unpaid judgments hanging over him, and had no property whatever, save a saddle-horse. The wife was the owner of two plantations, on one of which

the family resided. These facts were known to the merchants, and it was understood between them and the husband that the crops grown on the wife's plantation should be delivered in payment of the account. A portion of the cotton was so delivered.

What are the respective liabilities of the husband and wife upon this account? Numerous as are the decisions in this State on cognate subjects, it is believed that there exists no reported case definitely settling some of the questions here involved. We have given to their solution that careful consideration which their practical importance demands.

First, as to the plantation supplies. As to these, the statute, Code, § 1780, makes the husband the agent of the wife, *in invitum*, so far as she is concerned. Her separate estate, therefore, will be bound for their purchase, whether bought by herself, or by him with or without her consent. From this liability nothing will discharge her estate, save an express contract that it shall be released, or something equivalent to it. Neither the mere acceptance of the note of the husband nor the recovery of a judgment on such note will have that effect. *Guion* v. *Doherty*, 43 Miss. 538, 551; *Clopton* v. *Matheny*, 48 Miss. 285. The estate of the wife is, therefore, primarily liable for all supplies purchased for and used on her plantation. What description of articles are embraced within the term " plantation supplies " was considered and explained in the case of *Herman* v. *Perkins*, 52 Miss. 813.

But what liability does the law impose on the husband for these supplies? None whatever, unless he has himself imposed it. He contracts as the agent of the wife (so appointed by the statute), and can only be held to a personal liability by the same acts of assumption which would bind an ordinary agent when acting for his principal. Of course, if he gives his own note, or the joint note of himself and wife (unless he signs only as agent of the wife), he will be bound. If he agrees verbally, in advance, that he will be individually bound, the same result will follow; but the legal presumption must always be that he acts as agent, and not in his own right. In suits upon such contracts he must be joined with his wife; but only for conformity, in order that he may give her the benefit of his services

in making her defence, and no judgment will be rendered against him. *Bacon* v. *Bevan*, 44 Miss. 293; *Mallett* v. *Parham*, 52 Miss. 921.

Secondly, What are the liabilities of the parties with reference to family supplies, and the other classes of contracts which the statute declares shall be binding on the separate property of the wife, when entered into by herself, or by her husband with her consent?

1. What is the liability of the husband as to such contracts? As to them, he is not by law her agent, and can only become so by her consent. Waiving for the present the consideration of how this consent is to be evidenced, let us inquire what will be his liability if we assume it to have been established. Manifestly none whatever, unless, as said in relation to the plantation supplies, he has made himself liable. The only difference is as to the mode of establishing the agency; but when it has been established, the same results must follow. For the purchase of plantation supplies he is her agent by law; for making the other contracts he becomes her agent by her consent to his acts. Primarily he is never bound for plantation supplies; primarily he is always bound for family supplies. It is his duty to furnish them; and the law will usually presume that they have been bought by him on his own credit, and not on that of his wife. But both cannot be bound by an implied assumpsit. If the facts show a state of case where the law will impose a liability on the estate of the wife, then the husband can only be held upon something that amounts to an express contract upon his part. It is true that at common law he would be liable for all family supplies and necessaries, whether bought by himself or wife; but the statute declares that he shall not be liable for debts contracted by the wife before or after marriage, if she holds separate property. Inasmuch as the statute authorizes the wife to contract this class of debts upon her own responsibility, and thereby makes them *her debts*, the immunity granted the husband from "her debts contracted after marriage" will protect him from this class of debts as much as from any other. But when the husband himself makes the contract for her, *with her consent*, he simply acts as her agent; and the debt is as much hers as if she had contracted

it in person, and therefore the husband is by the statute pro-
tected from it, unless he has made himself liable also. She
can only be made liable by showing that it is her debt, con-
tracted by herself, or by the husband with her consent. But
the moment this is established the husband is discharged, be-
cause the statute declares that he shall not be liable for her
debts.

2. Let us examine now the liability of the wife. So far as
plantation supplies are concerned, nothing further need be
said. For them she is always liable, whether bought by her-
self or husband; nor will she be relieved therefrom by the
superadded liability of the husband, unless such was the con-
tract. How does she stand with reference to the other class
of contracts enumerated by the statute? For these she may
be bound either by her own acts or by those of the husband
to which she has consented. But she will not be bound, even
where she has herself made the contract, unless it was the
understanding, express or implied, that it was upon her credit
that the contract was based. Primarily the husband is bound
to support, clothe and educate the family; and the wife ordi-
narily, in making purchases of this character, will be treated
as his agent. She will have the right to presume that the
credit is extended to him, unless she is advised to the contrary,
or unless the circumstances of the case are themselves suffi-
cient so to advise her. The party seeking to hold her must
either show that she was informed that her credit was relied
on, or he must establish such a state of case as will warrant
the belief that she was aware of the fact without any distinct
notification; and this will be true whether the goods were
bought by her or by her husband.

How, then, may the wife make such contracts, or how may
she so consent to those made by the husband as to bind her
separate property? The statute gives the right, but is silent
as to how it is to be exercised. She must, therefore, be held
to have authority to contract, or give assent to the contracts
of the husband, in such cases just as if she were unmarried.
That the consent may be implied is evident from that clause of
the statute which makes her liable for buildings erected on her
land by her husband with her consent. It is clear that no

express consent need be proved in such a case, but that it will be inferred from her knowledge that the buildings were erected, and her failure to object to it. With reference to family supplies, clothing, tuition and the like, we think that where the husband has property or an income of his own, the legal presumption would be that the credit was given to him; and, in order to hold the wife liable, she must have either expressly assented or failed to object to the purchases, after being advised that her separate property was looked to. Where, on the other hand, as in the case at bar, the wife knows that the husband has no property which the law can reach, and he is engaged in no business save attending to her estate, and devoting his time to the production of profits, all of which must inure to her benefit, the presumption would be that she was aware that the credit was being extended to herself rather than to him; and if, under such circumstances, she bought goods herself, or suffered him to buy goods which she consumed, her consent that her estate should be bound therefor would be implied. We do not mean to say that this would be a necessary and inflexible conclusion of law, but rather that, upon the question of fact as to whether or not she had consented that her estate should be bound, these circumstances would fully warrant an affirmative response.

In the case at bar, the learned judge below, sitting without a jury, held that the goods were bought on the faith of the wife's property, and that by her conduct she had consented that they might be so purchased. We entirely concur in his conclusions both of law and fact. We think he erred, however, in holding the husband bound. As we have seen, he is only liable in cases where the wife is, by an express contract to that effect. There is an absence of proof of any such contract in this case. The judgment will, therefore, be reversed and remanded as to the husband, and affirmed as to the estate of the wife, in accordance with the recent statute allowing such judgments in this court. Acts of 1876, pp. 35, 36.

We cannot notice the objections to testimony, because no objection was made in the court below except on the motion for new trial, and this has been held inadmissible in a number of reported cases.

Whereupon the counsel for the plaintiff in error moved the court to correct the judgment reversing as to Evan Cook as an individual, and affirming as to him as executor, and to enter judgment reversing and remanding the whole case.

*T. J. & F. A. R. Wharton*, for the motion.

*Shelton & Shelton*, contra.

CHALMERS, J., delivered the opinion of the court on the motion.

It is objected by the motion that we are not justified by the act of March 24, 1876, Pamphlet Acts, pp. 35, 36, in reversing the judgment as to the husband, and affirming as to the wife, because, as insisted, that statute relates solely to the contracts and liabilities of copartners. This view is erroneous. The first section of the act relates alone to proceedings against partners; but the second, to " any action founded on any joint and several bond, covenant or other contract, or on any promise, contract or liability of copartners." It is evident that these words embrace any joint contract by persons other than partners as well as those by partners. The declaration in this case asserts a joint liability against husband and wife. The proof shows a liability on the part of the wife alone. The court below rendered judgment properly against the wife, and improperly against the husband. This statute authorizes us to affirm as to one and reverse as to the other.     *Motion overruled.*