W. J. HARRIS v. K. R. JONES.

*Mortgage, What Words Constitute—Grant of thing Not In Esse—Registration.*

1. Where the words of grant in an instrument are that the grantor "conveys a lien upon each and every of said crops" to be made upon certain land, such words will constitute a valid mortgage upon the crops,

although they be not planted at the time when such instrument is exe-·cuted and registered.

2. Where a party living in one county executes a mortgage upon a crop to be planted on land bought by him in another county to which he contemplates removing, such mortgage may be properly registered in the latter county, the mortgagor having actually made such removal after the registration of the paper.

(*Simpson* v. *Morris*, 3 Jones, 411, cited and approved.)

CIVIL ACTION, tried at Spring Term, 1880, of WILSON Superior Court, before *Avery, J.*

The case was submitted to the court upon the following facts agreed: On December 11th, 1877, one W. H. Bishop executed to Mollie Bardin a note under seal and a paper writing purporting to be a mortgage to secure the same, which are as follows:

$125.    On demand Nov. 1st, 1878, I promise to pay Mollie R. Bardin or order one hundred and twenty-five dollars for value received for one bay horse. Dec. 11, 1877.

                    (Signed)        W. H. Bishop [seal.]

These presents between William H. Bishop of the county of Jones and state of North Carolina of the first part, and Mollie R. Bardin of the county of Wilson of the state of North Carolina of the other part, witnesseth that whereas the party of the first part is now engaged or about to en-gage in the cultivation of various crops upon a tract of land in Craven county, known as the farm which the said Bishop has recently purchased of E. R. Stanley, lying on Batche-lor's creek and A. & N. C. R. R., and that the party of the first part is now indebted to the party of the second part one hundred and twenty-five dollars for one note; and that the party of the second part agrees to make advances in provisions and other supplies to the party of the first part from time to time during the year 1878, to be expended in the cultivation and housing the various crops to be made

on the said land or farm during the said year, to the extent of one dollar beyond which amount the advances to be made shall not go. In consideration of one dollar and to secure the said indebtedness of one hundred and twenty-five dollars and the advances hereafter made by the party of the second part, the party of the first part conveys to the party of the second part, their heirs, executors and adminis-trators, the following property: One bay horse known by the name of Dobbin, and a lien upon each and every of the said crops to be cultivated and made upon the said land or farm during the said year, with free power to take possession of all the said crops at any time and place after their matu-rity, and should the party of the first part do any act to de-feat this lien, the debt and advances secured herein shall be due and collected at once, as may be sufficient upon sale thereof to satisfy such advances and indebtedness and all expenses of making and executing these presents, and to take possession and sell so much of said property as may be sufficient to discharge the said indebtedness and what is due for advances after the first day of November, 1878, unless on or before that time the same should be sooner discharged by the surplus of said crop or otherwise. Wit-ness my hand and seal this the 11th day of December, 1877.

(Signed)          W. H. Bishop [seal.]

That the sole consideration of said note was the purchase of one horse used by the defendant in the cultivation of the crops herein referred to; that to secure the payment of the note the said W. H. Bishop, on the 11th day of December, 1877, executed to said Mollie R. Bardin the instrument, a copy of which is herewith filed as a part of this case, which was duly recorded in Craven county on the 28th of Decem-ber, 1877; that no part of said note has been paid except the sum of forty-one dollars and seventy-five cents, realized from the sale of the horse conveyed in said mortgage lien; that on the first day of November, 1878, the said Mollie

Bardin endorsed for value the said note to plaintiff; that on the 12th of February, 1878, the said W. H. Bishop, being indebted to K. R. Jones in the sum of eighty dollars, executed to him (defendant) a chattel mortgage, which was duly recorded in Craven county on the 1st of April, 1878; that on the 24th of May, 1878, the said Bishop being indebted to said defendant in the sum of one hundred dollars, executed to him a chattel mortgage, which was also duly recorded; that at the date of the execution of the mortgage to Mollie Bardin and the mortgage to the defendant on the 12th of February, 1878, the crops therein conveyed were not planted, but were planted on the 24th of May following, the date of the execution of the second mortgage to defendant Jones; that during the fall of 1878, the said Bishop delivered to defendant five bales of cotton which were raised during the year 1878 upon the land described in the mortgage to said Mollie Bardin and K. R. Jones, and the proceeds of the sale of said cotton, to wit, one hundred and fifty seven dollars, were applied to the payment of the notes described in the mortgages to said Jones and failed by twenty-three dollars of satisfying the same; that at the time of the receipt of said cotton, the defendant had no notice of the lien of the plaintiff other than the notice given by the registration of plaintiff's mortgage. At the time of the execution of the mortgage from Bishop to Bardin, to wit, Dec. 11th, 1877, the said Bishop was living in Jones county and had at that time bought the farm upon which the crops referred to were raised and had moved some of his personal property (two loads of corn) to said farm, but on account of the refusal of the lessee of that year to surrender the premises, he did not move his family and the residue of his personal property until the first of January, 1878. Bishop lived on said farm during the year 1878 and cultivated the same upon which the cotton referred to was raised.

The plaintiff demanded payment of the balance due upon the note, to be made out of the proceeds of the sale of the cotton. His Honor upon the facts ordered the action to be dismissed, and the plaintiff appealed.

*Messrs. Connor & Woodard,* for plaintiff.
*Mr. F. M. Simmons,* for defendant.

ASHE, J. The record in this case presents three questions for the consideration of this court.

1. Are the words ",conveys a lien upon each and every of said crops to be cultivated and made upon the said land or farm during the year" used in the deed, executed by the said Bishop to Mollie Bardin, sufficient to create a mortgage?

2. Can a mortgage be given upon an unplanted crop?

3. Was Craven the proper county for the registration of the mortgage?

Upon the first point we are of opinion the language used in the deed is sufficient to constitute a mortgage. "No particular form is necessary to constitute a mortgage," so the words of the deed clearly indicate the creation of a lien, specify the debt to secure which it is given, and upon the satisfaction of which the lien is to be discharged, and the property upon which it is to take effect. Jones on Mortgages, 60; In *McAffrey* v. *Wood*, 65 N. Y., 459, it is held "no special form of words is necessary to constitute a mortgage. The statement that the creditor is to have a lien, and that on default he may take possession and sell in the same manner as in cases of chattel mortgage, sufficiently discloses the intent."

In the case of *DeLeon* v. *Hegun*, 15 Cal., 483, it was decided by the supreme court of that state "that no particular words are necessary to create a mortgage. The words *we mortgage the property* when accompanied by a provision for the sale of it in case the money-recited in the instrument

as being thus secured, be not paid, are clearly sufficient. And in *Langdon* v. *Bull*, 9 Wendell Rep., 80, where the action was founded upon an instrument which ran thus: "Now therefore for the payment of said notes, I hereby pledge and give a lien on the said engine to the said Langdon, and in case the notes are not paid, hereby consent that Langdon shall hold the same as security and see himself harmless, it being understood that I keep possession of the same until the time comes for the payment of the notes, and in case they are not paid, Langdon may take the same;" *It was held*, that this instrument contained all the essential attributes of a mortgage of personal property.

In our case, the instrument not only conveys a lien on the property to secure the defendant, but gives the power to the vendee, in the event of a failure to meet the payment at maturity, to take possession and sell. These provisions clearly constitute it a good chattel mortgage.

As to the second point, whether an unplanted crop is the subject of a mortgage: That question has been expressly decided in the affirmative at this term of the court in the case of *Cotten* v. *Willoughby*, *ante* 75, and it is unnecessary to add any authorities to those there cited.

As to the remaining question, whether Craven was the proper county for the registration of the mortgage we are of opinion the registration in that county is sufficient, upon the authority of *Simpson* v. *Morris*, 3 Jones, 411.

In our case the mortgage was executed on December the 11th, 1877, and registered in Craven county December the 28th, 1877, and at the time of the execution of the mortgage, Bishop was residing in Jones county, but had purchased the farm on which the crop was to be made and was in the act of removing to it, and had moved some of his personal property, and was only prevented from removing his family and the remainder of his personal effects, by the the refusal of the lessee of the premises to surrender the

possession before the first of January. But he did not move on the first of January, and lived upon the farm in Craven county, upon which the cotton in question was raised, during the year 1878.

In the case of *Simpson* v. *Morris, supra,* the plaintiff had purchased some slaves from David Simpson and took a bill of sale for the same. They both resided in Union county when the bill of sale was executed, and the slaves were sent soon after the purchase to the county of Mecklenburg, where the plaintiff owned a plantation on which the slaves were kept until the plaintiff removed to the same place, and his father David Simpson, near there. The bill of sale was proved and registered in the county of Mecklenburg, and on the trial of the cause, the defendant objected to its reception as evidence, because, as he insisted, it should have been registered in the county where it was executed and where both parties resided at the time of its execution. Chief Justice NASH who delivered the opinion of this court held the registration sufficient. "One object," he said, "of the registration act is to furnish those who deal with the owners of slaves a ready way of ascertaining their title to them. Another is to ascertain where slaves are to be given in under the revenue laws. The purchaser, the plaintiff, residing in Mecklenburg county, and the slaves being there, would naturally search the register's office of that county to ascertain his title." So in our case a creditor of Bishop proposing to take a lien on his crop for supplies to be furnished, or a mortgage to secure a debt in the year 1878, would hardly have looked to the registry of Jones county for incumbrances on his crop to be raised on his farm in Craven county, but would naturally have searched the register's office in the latter county where he resided and where the crop was to be made. The cases are analogous. Bills of sale of slaves were required to be registered in the county where the purchaser resided, when he took the actual posses-

sion of the slaves, Rev. Code, ch. 37, § 20, and chattel mortgages in the county where the mortgagor resided. Bat. Rev., ch. 35, § 12.

The registration of the mortgage we think was sufficient. If it is not within the letter, it comes within the spirit of the act. There is error and the judgment of the superior court is reversed.

Error.                      Reversed.