W. E. BRITT et al. v. J. P. HARRELL, et al.

*Chattel Mortgage—Equitable Lien—Equitable Assignment.*

1. The words " we promise to pay to L. & B., out of the proceeds of
   certain railroad ties we have now in Hertford County, amounting
   to forty-two hundred, the sum of a hundred and thirty-two dol-
   lars,  *   *   *   and authorize the purchaser to retain that amount
   for them," contained in a promissory note, are not sufficient to
   constitute it a chattel mortgage, or an equitable lien, though duly
   proved and registered.

2. Nor is such instrument a sufficient equitable assignment of the ties, or
   the proceeds thereof, to the payment of the debt.

This was a CIVIL ACTION, tried before *Boykin, J.,* at Spring
Term, 1889, of the Superior Court of Hertford County.

The plaintiffs allege, in substance, that in February, 1888,
Dunn & Kitchen were engaged, in the county of Hertford,
in getting railroad ties for market, and while so engaged the
plaintiffs made advances to them in money and supplies to
a large amount; that on the 13th day of February, 1888,
"said Dunn & Kitchen were indebted to said Britt & Law-
rence in the sum of $132.26, balance on said supplies," for
which they executed their promissory note, in words and
figures as follows:

"$132.26.            WINTON, N. C., February, 13, 1888.

" We promise to pay Lawrence & Britt, out of the proceeds
of certain railroad ties we now have in Hertford County,
amounting to about forty-two hundred, the sum of one
hundred and thirty-two $\frac{26}{100}$ dollars, with interest thereon
from December 3d, 1887, to be paid as follows: First deduct-
ing eighteen hundred ties for O. H. Perry from the first
amount hauled, then we will pay Lawrence & Britt, out
of the remainder, at the rate of ten cents a piece for all

delivered to transportation until they are paid in full, and authorize the purchaser to retain said amount for them.

" Witness our hands, this the 13th day of February, 1888.

" Witness:                                DUNN & KITCHEN.

    " R. W. WINBORNE."

The said paper-writing was duly proved and registered in Hertford County on the 14th of February, 1888, and "thereafter Dunn & Kitchen did not cut and hew any more ties in said county, and said 4,200 ties were all that they had in said county at that time"; that about the 1st of April, 1888, Dunn & Kitchen delivered 800 ties for transportation, and left the remainder in the woods where they were cut; that about June 1st, 1888, Dunn & Kitchen abandoned the State, or kept themselves concealed therein to avoid service of summons, and with intent to defraud their creditors; and thereupon J. J. Jordan and S. J. Holloman, upon whose lands the ties were cut, sued out an attachment against them, and, under proceedings therein, the remainder of said ties, about 3,400, were sold at public sale, and the defendant Harrell became the purchaser; the ties so purchased were those owned by Dunn & Kitchen, in Hertford County, at the time of the execution by them of the said paper-writing, and embraced within its provisions; the defendants J. P. Harrell and A. C. Vann hauled to a point on the banks of the Chowan River, for transportation, 2,000 or more of the ties. No part of said note has ever been paid, and the plaintiffs allege that they have an equitable lien to have said ties subjected to the payment thereof. Dunn & Kitchen are totally insolvent, as is also Harrell, who is threatening to sell and remove said ties, and, if permitted to do so, the plaintiffs will sustain irreparable loss. Harrell purchased with full knowledge of the claim of plaintiffs, and they ask that he be restrained," &c.

A restraining order was issued, and the defendants filed thereafter the following demurrer:

"The defendants demur to the plaintiffs' complaint in this action, because it fails to state facts sufficient to constitute a cause of action, in that—

"1. It does not appear that the plaintiffs have any lien, equitable or otherwise, upon the railroad ties described in the complaint.

"2. It does not appear that the defendants, or either of them, are under any legal obligation whatever to the plaintiffs."

Judgment was rendered sustaining the demurrer, and the plaintiffs appealed.

*Mr. B. B. Winborne*, for plaintiffs.
*Mr. W. D. Pruden*, for defendants.

DAVIS, J.—after stating the case: The sole question presented in this case is, Was the paper executed by Dunn & Kitchen a chattel mortgage? Was it sufficient to constitute a lien, legal or equitable, in favor of the plaintiffs against a purchaser at a sale made by the Sheriff under execution?

Whether the instrument, in itself, is a mortgage, is a question of law to be determined by the Court. *Comron v. Standland*, 103, N. C., 207; Jones on Chattel Mortgages, § 18.

In the case before us there is nothing in the paper to indicate that Lawrence & Britt shall "have a lien" upon the railroad ties. Nothing found therein imports a conveyance of the title to the ties. No authority is given to sell the property upon default of payment, or in any way to dispose of or control it. There is nothing to bring it within the definition of a legal mortgage. Jones on Chattel Mortgages, § 1, *et seq.*

But it is insisted that it is an equitable assignment or appropriation of the ties to the payment of this debt, and

the purchaser at the Sheriff's sale had notice. We do not think it can be so considered. It was only a promise by Dunn & Kitchen to pay money, with the additional promise that they would pay it "out of the proceeds" of the ties.

While "no particular form is necessary to constitute a mortgage," yet the words must "clearly indicate the creation of a lien, specify the debt to secure which it is given, and upon the satisfaction of which the lien is to be discharged and the property upon which it is to take effect." "The statement that the creditor is to have a lien, and that on default he may take possession and sell, * * * sufficiently discloses the intent." *Harris* v. *Jones*, 83 N. C., 317, and cases cited. The instrument under review gives the plaintiff, in no event, authority to take possession and sell the ties.

A debtor says to his creditor: "I will send cotton which I have in my gin to my commission merchant and pay your debt out of its proceeds, or I will authorize him to retain it for you." The debtor sends the cotton off and sells it, or it is seized under execution and sold by the Sheriff. Would the creditor, in such a case, even though he had registered the *promises* of his debtor, have a right, in law or equity, to follow the property and have it applied to the payment of his debt? However it might be as between the parties, one making the promises and the other relying on them, in the absence of any charge or circumstances of fraud or collusion to cheat the debtor, as to third persons, such an agreement could, in no sense, be regarded or treated as a mortgage of the cotton.

The plaintiffs say: "This lien was not divested by the attachment in favor of Jordan and Holloman and the sale thereunder to the defendant," and for this, the case of *Lake* v. *Doud*, 10 Ohio, 415, is cited. The plaintiff's misfortune is that, in this case, there was no lien. In the case of *Lake* v. *Doud*, the mortgage had been drawn properly, and was

registered, but it was improperly attested; was not therefore a "legal mortgage." The complaint charged that the defendants (whose relations to each other are set out) combined to cheat and defraud him, and the Court, after setting forth at great length facts to show the fraudulent character of the transaction, were "irresistibly led to the conclusion" that it was fraudulent and void, and held that though the plaintiff had no legal mortgage, yet he had an equitable mortgage, which could be enforced.

There is no allegation or pretence of any combination and collusion between the execution creditors, the purchasers at the Sheriff's sale, and the debtors in the present case, to cheat and defraud the plaintiffs, and the case is unlike that of *Lake* v. *Doud*.

The plaintiffs had nothing in addition to their note but the *promises* of Dunn & Kitchen that they would pay "out of the proceeds of certain railroad ties," &c., and "authorize the purchaser to retain" the amount of their debts for them; and these promises, without a transfer of the title to the ties, as security, were worth no more, it seems, than the promise to pay the money.

Affirmed.