## H. HERMAN & Co. vs; REESE PERKINS et al.

1. MORTGAGE: *Agricultural lien. Act of February 18, 1867.*
Under the provisions of the act of February 18, 1867, the lien may be created for articles within the meaning of the act, as an agricultural lien, which lien, when created, although it may be junior in date to a mortgage or deed of trust, yet the right of the mortgagee, or *cestui que trust*, is subordinate to the agricultural lien subsequently imposed on the crop.

2. SAME: SAME: *What debts are embraced in the act.*
The agricultural lien may be created, under the act of 1867, "for an advance of money, purchase of supplies, farming utensils, working stock, or other things necessary for the cultivation of a farm or plantation."   There are a large range of debts not embraced in the provisions of the act, and not protected by it.   What the act means by "other things necessary for the cultivation of a farm or plantation" must depend upon the usage and customs of agricultural pursuits, taking into account the system of agriculture as we have it. But where the farmer has in good faith taken up the goods on the faith of the lien, and it is questioned whether this or that article falls within the·

statute, there should be evidence that the things were not needed for farm purposes, or that they are of such a nature of themselves as to be unfit for that purpose. If there be bad faith between the merchant and planter—such as creating the lien to hide the property from other creditors, or swelling the account so that the demand would have that effect—then other principles and considerations would furnish the rule for disposing of the case. When a planter is indebted to laborers for wages, and pays them off in goods obtained from a merchant, such a purchase will be protected by the lien, whether the goods be of the class embraced in the provisions of the· statute or not. It would be the same as advancing the money to pay the hands.

APPEAL from the Chancery Court of *Winston* County.

Hon. C. A. SULLIVAN, Chancellor.

All the material facts in this case are stated in the opinion ·of the court.

The following is assigned for error:

"Said decree only allowed a part of appellant's debt. The ·decree should have been for the whole debt claimed."

*Frank Johnston*, for appellants:

Two questions are presented:

1. Had Perkins a prior lien on the crop.

2. Should part of appellant's account be rejected as not ·embraced in the statute.

Perkins did not take a cross-appeal, and can not insist upon his priority of lien here. 2 Smith's Ch. Pr., 47. And the .sole question is the rejection of the items in the account. ,Spivy, who was the only witness who expressed an opinion on this legal question, enumerated, as not necessary to a crop, ·several small articles on the bill, which, when added, makes $35.82. Appellant was entitled to the item of $45.48, goods .advanced to laborers working on his farm.

*R. G. Rives*, for appellees:

In Stewart *v.* Hollins, 47 Miss., 709, the court say: "The ;statute implies that the debtor already has the land ready to be cultivated, and offers this lien, prior over all others, to him who will supply the means wherewith to make the crop."

In Cooper *v.* Frierson, 48 Miss., 309, it is said: "In·the most favorable view that may be taken of the complainant's ·demand, he was bound to acquaint himself of the agreement of

association between the parties, so as to know the scope of authority to bind each other or pledge the crop.''

Perkins' claim was founded upon the idea that the agreement between him and Spivy was of such a nature as to deprive Spivy and others of the right to incumber the crop until Spivy was paid. See Howard *v.* Simmons, 43 Miss., 83 ; Stewart *v.* Hollins, 47 ib., 709.

SIMRALL, C. J., delivered the opinion of the court.

John Spivy had given an agricultural lien, under the act '' for the encouragement of agriculture,'' of February 18, 1867 ; and also a deed of trust, including the crops, to Reese Perkins, to secure his obligations to pay certain amounts of cotton annually, for the purchase of the plantation. Part of the cotton, the products of the land, had been delivered to Reese Perkins—in discharge, in part, of Spivy's obligation—which was seized by H. Herman & Co., under a writ of sequestration.

Reese Perkins supported his right to the cotton on two grounds : 1st. Because his deed of trust was older than the agricultural lien. 2d. Because the indebtedness of Spivy to Herman & Co. was, in a large part, not protected by the statute of 1867.

It was ruled at this term, in the case of Brooks *v.* Watkins et al. (MSS.), that although the agricultural lien may be junior in date to a mortgage or deed of trust, yet the right of the mortgagee, or *cestui que trust*, is subordinate to the agricultural lien which the mortgagor or grantor may subsequently impose on the crop. That conclusion was reached by a fair interpretation of the statute. In Stewart *v.* Hollins, 47 Miss, 710, the lien is described as '' prior over all others to him who will supply to the agriculturist the means wherewith to make the crop.''

The first ground taken by Reese Perkins is not sustained. His claim on the cotton is inferior to that of H. Herman & Co. Whether the whole demand, or only a part of it, against

Spivy is made up " of an advance of money, purchase of sup-plies, farming utensils, working stock, or other things necessary for the cultivation of a farm or plantation," is involved in the second ground of defense made by Reese Perkins. The 1st section of the act of 1867 contains the enunciation, in part, of the objects for which the agriculturist may incur the debt with privilege of lien, and at the close of the enunciation adds, " or other things necessary for the cultivation of a farm or plantation ;" " farming implements, work stock," are specifically mentioned ; "whatever other things are necessary" have the same special privilege. As said in Stewart v. Hollins, 47 Miss., *supra*, the " encouragement of agriculture," promised in the title of the act, is a " lien prior over all others to him who will supply the farmer the means to make the crop." What is embraced in the words " other things necessary for the cultivation of the farm  *  *  * " etc., must be learned by resort to the usages and customs of the agricultural interest. The statute implies that the farmer has the land. What he needs, and what the statute proposes to secure, is the common and usual outfit, provided from time to time, to make the crop. All would agree that work animals, plows, hoes, wagons, provender for beasts, food and clothing for laborers, and medicines, were necessary things in the production of a crop. The statute invited those who had means to assist the farmer with necessaries. What might be necessary on a large plantation would be very extravagant for the cultivation of a few acres. And when it is ascertained that food, for instance, is necessary, the query is, does it include luxuries, and what are luxuries ? Shall sugar and coffee be excluded ? Shall the meat be ham or pickled pork ? Shall the bread be flour or meal ?

It will be seen at once that the subject is beset with difficulties, and the solution will be as various as the tastes and observations of men. All that can be attained in such investigation is approximate right. At last the only rule that can be adopted with safety is to take into the account the system

of agriculture as we actually have it, the character of food, clothing, etc., usually consumed by laborers, the implements and provender appropriate for that use, and in that light determine whether an account, in whole or in part, is in excess of the statute.

Nor should the articles furnished be scanned too closely when the merchant is enforcing his lien. Herman & Co. let Spivy have one or two gallons of whisky. Ought that to be rejected? It may be used medicinally, both for man and beast. Most generally it is drunk as a beverage; but how, if the farmer buys but a gallon or two of liquor, can the merchant know whether he is going to drug sick horses with it, make tonics, or consume it as a beverage?

If the farmer applies for flour, shall the merchant lose that credit because he ought to have dispensed corn meal? If the goods advanced by the merchant are of the class, and about the quantity, which are usually taken up to be used by the farmer in making a crop, and both merchant and farmer in good faith deal in respect to them as fairly within the meaning of the law and secured by the lien, we hardly think it would subserve either justice or honesty to submit each several item to a close scrutiny of whether necessary or not.

The absolute necessaries of life are few; of what they consist in any avocation is purely relative. It was ruled in Stewart v. Hollins that the lien could not be created for the rent of the land, because the statute implied that the party already had that, and needed assistance to make the crop.

There is a large range of debts for which this lien cannot be created—those which have no relation to agriculture, and do not arise out of assistance in production of crops. But where the farmer has in good faith taken up the goods on the faith of the lien, and it is questioned whether this article or that falls within the law, there ought to be evidence that the things were not needed for farm purposes, or that they are of such nature of themselves as to be unfit for that use.

If there be *mala fides* between the merchant and farmer—

such as creating a lien to hide the property from other cred-
itors, or swelling the account so that the demand would have ·
that effect—then other principles and considerations furnish the
rule for disposing of the case.

It was shown that Spivy paid off some laborers, to whom he
was indebted for wages, with goods obtained from Herman &
Co. The lien, we think, protects that part of the account.
Whether the goods were of the class meant by the statute or
not, it would be the same as advancing the money to pay the
hands.

But a small part of the account ought to have been disal-
lowed—not so much as was rejected by the chancellor.

We will not undertake to determine precisely how much is
protected by the lien, but reverse the decree and remand the
cause for further proceedings in accordance with these views.