PATAPSCO GUANO COMPANY v. J. T. MAGEE and others.

*Agricultural Liens, void unless executed in accordance with the statute—Evidence—Custom—Interest—Execution .levied upon crop.*

1. Under the authority of *Clark* v. *Farrar*, 74 N. C., 686, an agricultural lien can only be acquired by virtue of the statute and in strict compliance with ·its requirements. The agreement must be in writing and executed *before* the advancements are made or supplies furnished. Nor will such an instrument be allowed to operate as a mortgage. It was therefore held no error, in an action to enforce an alleged lien, to exclude as evidence an instrument not drawn in accordance with the statute.

2. In such case, evidence as to the custom of the plaintiff to have agreements signed after delivery of supplies to customers, was also properly rejected.

3. Interest is not allowed as a matter of law in an action of claim and delivery (Rev. Code, ch. 31, § 90, does not embrace such cases), but the jury may, in their discretion and as damages, allow interest upon the value of the property from the time it was taken.

4. Under a justice's execution the entire crop of a defendant was levied upon by a constable, and advertised for sale; the crop consisted of cotton, matured and standing in the field, and estimated at 20,000 pounds; a few days afterwards the sheriff, under a proceeding in claim and delivery, instituted by the plaintiff in this action, had such a part of the crop gathered as was sufficient to satisfy the plaintiff's claim of 1125 pounds, the number specified in the mandate: *Held*, that the plaintiff is not responsible to the execution creditors defendant for the residue of the crop, since it remained unmolested in the field and subject to be taken by the constable under the executions in his hands.

5. Evidence that the sheriff delivered the property by an agent or deputy, did not have the effect of contradicting his return, that he himself delivered it.

(*Clark* v. *Farrar*, 74 N. C., 686 ; *Harris* v. *Jones*, 83 N. C., 317; *Cotten* v. *Willoughby*, *Ib.*, 75; *Devereux* v. *Burgwyn*, 11 Ired., 490; *Lewis* v. *Rountree*, 79 N. C., 122, cited and approved.)

CLAIM AND DELIVERY, tried at Fall Term, 1881, of NORTHAMPTON Superior Court, before *Gilmer, J.*

In September, 1878, the defendant, Magee, as constable, levied upon the entire cotton crop of one Jordan, then matured and standing in the field, and estimated to be about twenty thousand pounds, by virtue of certain justice's executions, amounting in the aggregate to $583.08, in favor of the other defendants. Later, in the same month, the plaintiff commenced this action of claim and delivery for eleven hundred and twenty-five pounds of said cotton, estimated to be worth $112.00, claiming to have a special property in the same for guano furnished said Jordan in the year 1878, to enable him to make a crop, as set forth in the following instrument:

STATE OF NORTH CAROLINA, COUNTY OF————.

No. 202. On or before the 1st day of November, 1878, I promise to pay to Patapsco Guano Company the sum of eleven hundred and twenty-five lbs. of good lint cotton, for fertilizers furnished for the year 1878. I hereby constitute this obligation a lien on my crops of all kinds for the year 1878, and bind myself, my heirs and assigns for the faithful payment of the same, waiving claims and exemptions allowed by law. Witness my hand and seal June 6th, 1878. (Signed and sealed by A. J. Jordan, and witnessed by W. P. Vick.,) which instrument was duly proved and registered on the 5th day of July, 1878.

Upon the plaintiffs' making the proper affidavit, and giving the required undertaking for the delivery to the plaintiff company of the cotton, eleven hundred and twenty-five pounds of lint cotton were accordingly delivered, and thereafter retained by the plaintiff.

On the trial, the plaintiff offered to introduce the said paper writing as an "*agricultural lien*" but the same was objected to by defendant, on the ground that it did not conform to the statute, inasmuch as it did not appear there-

from, that the fertilizers furnished were to be used in the cultivation of a crop; or that they were used in making the crop upon which the lien is attempted to be enforced; or that the person declaring the lien was *engaged*, or *about to be engaged*, in the cultivation of the soil; and because it did appear, therefrom, that the fertilizers were furnished before the execution of the instrument and the taking of the lien. These objections were sustained by His Honor, and the plaintiff excepted.

The plaintiff then offered to show by one Vick, the attesting witness to said instrument, that the agreement therein set forth was entered into before the fertilizers were furnished to Jordan, though it was reduced to writing afterwards, and that it was his custom, as agent of the plaintiff, to have the contracts signed after the delivery of the goods to his customers, but upon objection of the defendants the court excluded the evidence, and the plaintiff excepted.

The plaintiff then offered to put the instrument in evidence as a *mortgage*, but upon objection, was not permitted to do so, and again excepted.

The defendants introduced as a witness the defendant Magee, who testified that, at the commencement of this action, he had levied upon, and had possession of, Jordan's entire crop of cotton, then matured and standing, and had advertised the same for sale, estimating it as containing at least 20,000 pounds, and that the sheriff in executing the warrant of claim and delivery, issued at the instance of the plaintiff in this cause, took the whole of the crop out of the possession of the witness.

The plaintiff thereupon introduced the agent Vick, who testified that, while the return of the sheriff showed that he delivered to the plaintiff 1,125 pounds of cotton, that officer did not, in fact, deliver any part of it, but that it was, afterwards, delivered to the witness, as agent, by Jordan himself, and that no claim was laid to any other part of the crop, or

any control taken over it. This evidence was objected to by the defendants, on the ground that its effect was to contradict collaterally the return of the officer, but it was received by the court, and thereupon the defendants excepted.

At the request of the defendants, as contained in a special prayer for instructions, the court charged the jury: "That if they should believe that the sheriff, in attempting to take the 1,125 pounds of cotton out of the possession of the defendant Magee, necessarily or actually, took the whole crop out of his possession, then the defendants would be entitled to recover of the plaintiff the value of the whole," but to this, His Honor added, that if the sheriff, after taking the 1,125 pounds of cotton, left the residue of the crop so that it could have been relieved upon by the constable, then it was the defendants' own lookout if they permitted it to be lost afterwards, and that in such case, the jury should give a verdict against the plaintiff for only so much of the cotton as was actually taken and delivered by the sheriff. To this latter part of the charge the defendants excepted.

Upon the issues submitted, the jury found the value of the 1,125 pounds of cotton, taken by the plaintiff, to be $91.35, and that the defendants sustained, by reason of the plaintiff's action, no other damage. The court thereupon gave judgment in favor of the defendants for the sum of $91.35, with interest from the 30th day of September, 1878, from which both parties appealed.

*Messrs. Thos. W. Mason* and *Willis Bagley*, for plaintiff.
*Mr. Sam'l J. Wright*, for defendants.

RUFFIN, J., after stating the facts. The plaintiff assigns as error, the refusal of the court to admit the instrument in evidence, either as an agricultural lien, or as a mortgage, and the exclusion of the testimony of the agent, Vick, as to the agreement of the parties. The plaintiff also contends

23

that no interest should be allowed the defendant on the damages assessed by the jury, but the court gave judgment for that sum with interest from the 30th of September, 1878, that being the date of the seizure of the cotton by the sheriff.

The errors assigned by the defendants were : 1. The admission of the testimony of the witness, Vick, as to the amount of the cotton received by him, and the person from whom it was received.  2. The instructions given by His Honor to the jury.

The case of *Clark* v. *Farrar*, 74 N. C., 686 is directly in point, and if allowed to have any force as an authority, must be conclusive as to the first three exceptions taken by the plaintiff.  It is there said that an agricultural lien can only be acquired by virtue of the statute and a strict compliance with its requirements, and that amongst its requirements is the plain one that the agreement must be reduced to writing and executed by the parties *before* the advancements are made or the supplies furnished.

It is needless to speculate why this provision is made by the statute.  It is clearly so written and can be conveniently observed, and if parties will wilfully disregard it, they must abide the consequences.

According to the same authority, an instrument, which is intended by the parties to operate as an agricultural lien, and which purports to be one, must take effect *as such*, or not at all, and will not be permitted to prevail as a mortgage.

The decision is put squarely upon the ground that creditors and subsequent purchasers have a right to know, truly, what encumbrances are upon the property, and their nature and extent, and this information they are entitled to have *ex visceribus*, the deed itself.  Besides this, the instrument now under consideration does not convey, or purport to convey, the title of the property which was the subject of agreement, to the plaintiff, but only provides that his debt shall constitute a lien thereon.  In Jones on Chattel Mortgages,

§ § 8, 11, and 12, it is said that a *decisive test* of a legal mortgage of personal property is the use of words which make the instrument one of sale, conveying the title of the property to the creditor conditionally, so that, by the non-performance of the condition by the debtor, the title will be transferred to the creditor, or he shall be clothed with the power to sell. In both of the cases of *Harris* v. *Jones*, 83 N. C., 317, and *Cotten* v. *Willoughby, Ib.*, 75, cited by counsel for plaintiff, the deeds contained express stipulations for the sale of the property in case of the debtor's default, and are therefore easily to be distinguished from the one before us. Such instruments have sometimes been enforced as mortgages between the parties themselves, but never, so far as our investigation has gone, as against subsequent *bona fide* purchasers or creditors. Such being the state of the law, it was proper, as a matter of course, to reject the testimony offered, as to the custom of the plaintiff to deliver goods to its customers before taking liens from them, and as to the course of dealing in this particular case, since its only effect could be to show, that both the usual custom of the company and this special agreement were in the very teeth of the statute, and consequently void.

In the opinion of the court the plaintiff's last exception is well taken. The rule in this state is, that interest, *as interest*, is allowed only when expressly given by statute, or by the express or implied agreement of the parties. *Devereux* v. *Burgwin*, 11 Ired., 490 ; *Lewis* v. *Rountree*, 79 N. C., 122. The only statute upon the subject is that contained in Rev. Code, ch. 31, § 90, which provides that all sums of money *due by contract of any kind whatsoever*, excepting such as may be due on penal bonds, shall bear interest, &c., but there is no provision made for actions of *trover* or trespass *de bonis asportatis*. In such cases, in order to compel the wrong-doer to make full compensation to the injured party, the jury may, in their discretion, and as damages, allow interest upon

the value of the property from the time of its conversion or seizure, and it has been usual for them to do so. But there is no rule which gives it as a matter of law and right, and it was error, therefore, in His Honor to have thus added to the damages as assessed by the jury.

The defendants' exceptions, we think, can, neither of them, be maintained. The claim of the plaintiff, as set forth in the affidavit, was for eleven hundred and twenty-five pounds of cotton, and the mandate to the sheriff was expressly limited to that number of pounds. It may possibly be, as laid down by His Honor, that if the property had been so circumstanced, as that the sheriff, in executing the writ, must *necessarily and in fact* have removed the whole crop out of the possession of the constable, and in so doing had caused its loss to the execution creditors, the plaintiff might have been responsible for the whole, upon the principle that every one must so use his own as not to injure another.

But certainly upon no other principle, either of law or common justice, could such responsibility attach to the plaintiff.

If, in executing the order, the officer abused his authority by exceeding the exigencies of his writ, the responsibility must rest upon him, and not upon the plaintiff, who neither authorized such excess nor gave it sanction.

But the truth is, there is no abuse of authority disclosed in the case. The cotton, though matured and subject to execution, stood in the field, and was incapable of immediate delivery, and all that the officer did, was to have picked and delivered the number of pounds specified in the mandate and secured by the plaintiff's undertaking, leaving the residue unmolested and the rights of the defendants with regard to it entirely unobstructed.

It is not like the case of seizure and sale of property under execution, whereby a trespass may be committed if levied upon the property of a wrong party; but the course pur-

sued was that which the law prescribes, in order that the title of personal property, when disputed, may be gotten before the courts and tested by a trial there had.

As to the residue, left untouched in the field and just in the condition it was before the plaintiff began the action, it was exactly as His Honor said, the duty of the constable to look after it, and if he permitted the same to be lost to the executions in his hands, the fault was his own, and his must be the responsibility.

The sheriff was at liberty, as he saw properly to do, to employ a deputy, or agent, to pick and deliver so much of the cotton as was claimed by the plaintiff; and the evidence going to show that he thus delivered it, and not in person, in no manner tended to contradict his return upon the writ.

The judgment of the court below is reversed, and the defendants will have judgment here for the sum of $91.35, with interest thereon from the first day of the term of the court, at which the judgment appealed from was rendered, and the clerk will divide the costs of this court between the parties.

PER CURIAM.                     Judgment accordingly.