W. H. DAIL & BRO. et als v. JOHN T. FREEMAN.

*Execution Sale—Agricultural Lien—Parol Contract to Purchase Land—Judgment Lien.*

1. A purchaser under execution sale takes all that belongs to the debtor and nothing more. A greater estate or interest than the debtor owned cannot be conveyed thereby.

2. A sale by the sheriff relates to the date of the judgment so as to defeat all conveyances and incumbrances upon the land subsequently made, but it has no application to the crops raised on the land after the rendition of the judgment, but before the sale.

3. Where an agricultural lien is made by a vendee who has paid only a portion of the purchase money, of which the vendor has notice but makes no objection, his assent to the lien will be presumed.

4. A parol contract for the purchase of land, is voidable, not void. In such case, a vendee who is in possession is the tenant by sufferance of the vendor.

5. So, where a tenant makes an agricultural lien, and afterwards the land is sold under execution as the property of the landlord; *It is held,* that the owner of · the lien has a right to the crop superior to the purchaser at execution sale.

6. A judgment creditor has neither *jus in re* nor *jus ad rem* in the judgment debtor's land, but only the right to make his lien effectual by a sale under execution.

(*Davidson* v. *Frew,* 3 Dev., 3; *Hoke* v. *Henderson, Ibid,* 12; *Homesley* v. *Hogue,* 4 Jones, 481; *Wellborn* v. *Simonton,* 88 N. C., 266; *Pearsall* v. *Mayers,* 64 N. C., 549; *Brothers* v. *Hurdle,* 10 Ired., 490, cited and approved).

This was an action of claim and delivery for two bales of cotton, tried before *MacRae, Judge,* and a jury, at the July Special Term of GREENE Superior Court.

On the trial the plaintiff offered evidence tending to show that one Charles Hart contracted with Lewis Johnson in 1874 for the land upon which the two bales of cotton in controversy were raised in 1878. Johnson sold the land to Alexander Williams and turned over to him the notes which Hart had given him for the land. He afterwards sold to W. F. Williams. Hart had a bond for title to be made when the notes were paid.

In March, 1878, Hart, who had been in possession of the land since his purchase from Johnson, gave to W. H. Dail & Bro., in

consideration of advances agreed to be made by them, a lien upon all the crops he should make on the land where he then resided, and also a similar lien, of same date, upon like consideration, to McDowell, Pate & Co., two of which firm, W. H. Dail and G. T. Dail, were members of the other firm of W. H. Dail & Co. These liens had not been discharged, but were still in force, when the land was sold by the sheriff in August, 1878, as hereinafter stated.

The defendant offered in evidence several judgments; among others, a judgment in favor of Spivy against Williams, dated 16th day of January, 1874, upon which execution was issued and the land upon which the cotton was raised was sold by the sheriff on the 25th day of August, 1878, and purchased by the defendant J. H. Freeman.

The defendant further offered evidence tending to show that, after the sale, Hart became his tenant and promised to pay him rent, and in the spring after the land was sold, Hart came to John F. Freeman, who was a witness for the defendant, and said to him, "You told me whenever I got that cotton ready to let you know; there are two bales of cotton there, and several persons are after it. If you don't come to-day, some one else will get it." This was in the fall of the year, directly after the cotton was picked, and the fall after the land was sold and bought by Freeman. That Charles Hart was then living on the place, and had never paid Freeman anything, except the two bales of cotton. The plaintiff then introduced Hart as a witness, who testified that he had never rented the land from Freeman nor told him to take the cotton. He further testified that he had cancelled the contract for the sale of the land before the execution sale, and had rented it from Williams ever since.

The bond for title was offered by the plaintiff to show that Hart was in under a contract of purchase of the land, and not under a contract to pay rent. It was objected to by defendant, but admitted by the Court, and the defendant excepted.

The defendant asked the following instructions:

1. If Charles Hart agreed to pay rent to J. T. Freeman as agent of J. H. Freeman, the plaintiff is not entitled to recover, and the plaintiffs are not the owners thereof, and the defendant does not wrongfully withhold possession.

2. If Freeman got possession of the cotton with the consent of Charles Hart, the defendant does not wrongfully withhold possession thereof, nor is the plaintiff the owner thereof.

3. If the defendant, as agent of J. H. Freeman, got possession of the cotton peaceably, the plaintiffs are not the owners thereof.

All of which were declined, and the defendant excepted.

The defendant tendered the following issues :

1. Did Charles Hart rent the land on which the cotton, which is the subject of controversy, was raised, from J. T. Freeman, as agent of J. H. Freeman ?

2. Did Charles Hart authorize the defendant to go and get the cotton, which is the subject of action ?

His Honor declined to submit these issues to the jury, and the defendant excepted.

Then the following issues were submitted :

1. Are the plaintiffs the owners and entitled to the possession of the two bales of cotton described in the complaint ?

2. Does defendant wrongfully withhold possession of the same from plaintiff ?

3. What is the present value of the cotton ?

The presiding Judge charged the jury, that the plaintiffs hold two mortgages on the crop of Charles Hart for the year 1878. This being so, the plaintiffs would be entitled to recover, unless the defendant can show a better right to hold the cotton which he admits to be in his possession. But the defendant says he holds the cotton as agent of J. H. Freeman, who was the landlord of Charles Hart. If defendant does so hold it, he has the better right to it, as the landlord's lien is paramount. Defendant offers in evidence the sheriff's deed for the thirty acres of land, sold under execution, in the case of Spivey against W. F. Williams, to J. H. Freeman, and testifies that this is the same land that

the cotton was raised on, and that Charles Hart agreed to pay rent and authorized him to get the two bales of cotton. If Hart was in possession of the land under a bond for title, which was defective and void, and it amounted only to a parol contract for the purchase of the land, and had paid part of the purchase money, the ordinary relation of landlord and tenant did not exist between Hart and the owner of the land, and when the land was sold under execution, the same interest which the owner had was conveyed by the sale and the sheriff's deed. If Hart agreed to pay rent to Freeman before he mortgaged the crop to the plaintiff, this would constitute the ordinary relation of landlord and tenant, and Freeman's lien for the rent would be paramount and the plaintiffs would not be entitled to recover. There is some question whether Hart did agree to pay rent to Freeman, and when he did so agree.

The defendant excepted to all the foregoing.

The jury responded in the affirmative to the first and second issues, and on the third issue assessed the plaintiff's damages at $73.80.

There was judgment for the plaintiffs, and the defendant appealed.

No counsel for the plaintiffs.
*Mr. W. C. Monroe,* for the defendant.

ASHE, J. (after stating the facts). There is no error in the ruling of His Honor in refusing the instruction asked by the plaintiff, nor in rejecting the issue tendered by him, for the reason they were not such as were warranted by the pleadings or the facts of the case. Nor are we able to discover any error in the instruction given by His Honor to the jury, which could have operated to the prejudice of the defendant.

The defendant claimed the land on which the two bales of cotton were raised in 1878, by a sheriff's deed made to him, by virtue of a sale of the land under an execution on the 30th of

August, 1878, issued by leave of the court upon a judgment rendered the 10th of January, 1874. The defendant then acquired the interest, whatever it was, of W. F. Williams, the defendant in the execution, and this would have given him the right to the rent of the land for that year accruing after the sale, or, at least, the right to recover for the use and occupation for that term, unless there was something done by the defendant in the execution previous to the sale which prevented his said rights from attaching.

The purchaser under an execution takes all that belongs to the debtor and nothing more; a greater estate or interest than the debtor owned cannot be conveyed. *Herman on Executions,* sec. 360.

Here, Hart was the vendee of Williams, the defendant in the execution, by a parol contract of purchase—he had paid a part of the purchase money, and was put into possession of the land by Williams, and continued to hold possession by his consent to the time of the sale by the sheriff. He was only the tenant at sufferance of Williams, who had the right to deprive him of the possession at any time upon a reasonable notice. But he did not exercise the right, and until he should see proper to do so, Hart was rightfully in possession, and being so, he executed in March, 1878, the two agricultural liens upon his crops to be raised on the land during the year 1878, which were duly registered, and thus gave notice to everybody.

Williams the vendor, therefore, had notice, and not objecting, his assent to the lien given by Hart must be presumed. Hart then, so far as Williams was concerned, had the right to give the liens, and they conveyed a vested right to the plaintiffs in the crops to be made during the year 1878, as fully and effectually as if they had been given by Williams himself; and if they had been given by him, would the purchaser of the land at the sale under execution divest the rights of the plaintiffs acquired by the agricultural liens? We are of the opinion, it would not. It is true where there is a judgment lien upon land,

a sale under execution issued upon such judgment will pass to the purchaser all the rights and interests of the defendant in the execution, and when he obtains the deed of the sheriff, it will relate to the rendition of the judgment, so as to defeat all conveyances and incumbrances upon the land subsequently made. But this relation has no other effect than to defeat such alienations and incumbrances, made subsequent to the rendition of the judgment, upon the *land itself*. It has no application to the products or profits of the land arising or accruing in the interval between the judgment and the sale. If that were so, the purchaser at an execution sale under a judgment several years old might receive the rents accruing during all that time; but the reason he cannot do so, is because the judgment lien on land constitutes no property or right in the land itself: A judgment creditor has no *jus in re* nor *jus ad rem* in the defendant's land, but a mere right to make his general lien effectual by following up the steps of the law, and consummating his judgment by an execution and sale of the land. *Freeman on Judgments, sec.* 338, and *Herman on Executions, sec.* 335. And the only effect of the relation of a sheriff's deed to the judgment is to preserve and make effectual the lien of the judgment under which the execution sale was made. *Freeman on Executions, sec.* 333. For any other purpose his deed only relates to the day of sale. It vests the title of the land in the purchaser only from the time of the sale. *Davidson* v. *Frew,* 3 Dev., 3; *Hoke* v. *Henderson, Ibid.,* 12. And only such interest as the defendant in the execution has in the property levied upon and sold, whether real or personal, passes by the sheriff's sale. *Homesley* v. *Hogue,* 4 Jones, 481. Hence, although the purchaser, at execution sale, acquires the right to the rents accruing at and after the time of sale, by purchasing the reversion when the land is in possession of a lessee, if the defendant in the execution has no right to them at the time of sale, the purchaser acquires no right. Here, Williams had no right to the rents or crop, nor claim for use and occupation, at the date of the lien or at the time of the sale. He had

no such interest as could be passed by the sale. Hart was his vendee, it is true, only by a parol contract; but it was still a valid contract, unless Williams should see proper to make it void by setting up the statute of frauds. Until that should be done, Hart was in possession lawfully as vendee, and was his tenant at sufferance, and as such was entitled to the rents and profits of the land. *Wellborn* v. *Simonton*, 88 N. C., 266; *Pearsall* v. *Mayers*, 64 N. C., 549. If he was entitled to the rents, he was, of course, entitled to the crops, and consequently had the right to give a lien on them for advances to enable him to make them.

It is held that a purchaser at an execution sale is not, as a general rule, entitled to the crops nor the fixtures on the land if the premises be in possession of a tenant. Such tenant has the right to gather the crops and remove the fixtures, but it is otherwise when the crop is raised by the defendant in the execution—*Herman on Execution*, §347. But even in that case the principle applies only to the crops which have not been severed before the sale; when there has been a severance before the sale, the crops do not pass to the purchaser. This distinction is maintained in several decisions of the Supreme Court of Pennsylvania. In *Stambaugh* v. *Yates*, 2 Rawle, 161, where grain growing had been sold under execution against the debtor, before the sale of the land upon a *ven. ex.* it was decided that severance was implied, and that the grain did not pass with the land; and in *Myers* v. *White*, 1 Rawle, 353, a mortgagor assigned all his property for the benefit of his creditors, it was held that the growing grain passed to the assignees, and not to the purchaser at sheriff's sale of the land sold by virtue of the *levari facias*, because the assignment amounted to a severance. To the same effect are *Porche* v. *Bodin*, 28 La. An., 761; *Brothers* v. *Hurdle*, 10 Ired., 490. Upon the principle decided in these cases, the agricultural liens effected a severance of the crops and they did not pass to the purchaser, and this conclusion is strongly supported by the evident policy of our Legislature to encourage agriculture, man-

ifested by numerous enactments on the subject, notable among which are sections 1749 and 1799 of *The Code*. Under the provisions of these sections, if Hart was the tenant of Williams at the time of the sale, the case presents a somewhat different aspect. It will be noticed that there was a conflict of testimony as to whether Hart ever attorned to Freeman, the purchaser at the execution sale. Freeman offered evidence tending to show that he did, and the plaintiff on the other hand, offered the testimony of Hart, who denied that he ever became the tenant of Freeman, but testified that he surrendered his contract of purchase before the sales and became the tenant of Williams, the defendant in the execution, and the jury have found the issues in favor of the plaintiff; the inference is they found that Hart was the tenant of Williams. If so, then section 1749 applies, which reads: "Where any lease for years of any land for farming, on which a rent is reserved shall determine during a current year of the tenancy, by the happening of any uncertain event determining the estate of the lessor, the tenant, in lieu of emblements, shall continue his occupation to the end of such current year, and shall then give up such possession to the succeeding owner of the land, and shall pay to such succeeding owner a part of the rent accrued since the last payment became due, proportionate to the part of the period of the payment elapsing after the termination of the estate of the lessor to the giving up such possession, and the tenant in such case shall be entitled to a reasonable compensation for the tillage and seed of any crops not gathered at the expiration of any current year, from the person succeeding to the possession." It will be observed that this provision accords with the doctrine laid down in *Herman on Executions, supra*, that the purchaser would not be entitled to the crops but only to a portion of the rent. If Hart, then, at the time of the sale, was the tenant of Williams, he had the right to hold possession to the end of the year, and Freeman would be entitled to the rents accruing only after the sale. But the provisions of this section must be construed in connection with and in subordination to those of section 1799,

where it is provided that, "If any person shall make any advance, either in money or supplies, to any person who is engaged in, or about to engage in the cultivation of the soil, the person so making such advance shall be entitled to a lien on the crops which may be made during the year, upon the land in the cultivation of which the advances so made have been expended, *in preference to all other liens existing or otherwise, to the extent of such advances.*"

This provision would seem to override the purchaser's claim for rent after his purchase, and his right to rent after that time would be subject to the claim of him who held the liens.

After a careful review of the subject, our conclusion is there was no error in the ruling and judgment of the Superior Court, and the judgment of that court is therefore affirmed.

No error. Affirmed.