SHADE WOOTEN and J. W. ISLER v. CALHOUN HILL.

*Agricultural Lien—Contract—Mortgage—Landlord and Tenant.*

1. An agricultural lien duly executed and registered takes precedence of a mortgage of prior date and registration, upon the "crops" therein subjected, to the extent of the advances made.

2. The lien of the landlord takes precedence of all liens.

3. An agricultural lien and a mortgage may be created by the same instrument.

WOOTEN v. HILL.

4. The operations of a mortgage or agricultural lien in respect to crops is confined to crops then or about to be planted, and will not be extended further than those planted next after the execution of the instrument.

(*Patapsco Guano Co.* v. *McGee*, 86 N. C., 350; *O'Kelly* v. *Williams*, 84 N. C., 281; *Dail* v. *Freeman*, 92 N. C., 351; *Robinson* v. *Ezzell*, 72 N. C., 281; *Cotton* v. *Willoughby*, 83 N. C., 75; *Harris* v. *Jones*, Ibid., 317; *Rawlings* v. *Hunt*, 90 N. C., 270; cited and approved).

CIVIL ACTION, tried upon a case agreed, before *Philips, Judge*, at August Term, 1887, of the Superior Court of LENOIR county. There was judgment for the defendant, and the plaintiffs appealed.

The action was originally commenced in the Court of a justice of the peace, and was carried by appeal to the Superior Court. The facts agreed are, substantially, that the plaintiffs are the surviving partners of J. S. Wooten & Bro., and this action was commenced to recover money had and received by the defendant to the use of the plaintiffs; that on the 1st day of January, 1886, one W. J. Watkins executed to one J. A. McGee, a chattel mortgage, in the usual form, and includes, among other things, the "entire crops of corn, cotton, rice, wheat, rye, and all other produce growing, and to be grown," by the said Watkins, for the year 1886, on his own lands, or the lands of others; that said chattel mortgage was duly and properly registered on the 29th of January, 1886, and there is now due thereon the sum of $26.00, and the defendant is the owner of the same.

That on the 29th of January, 1886, the said Watkins executed to the defendant Hill, a chattel mortgage, and which is in the usual form, and by which the said Watkins conveyed as follows : "My entire crops of every kind, to be made and grown on the lands upon which I now reside, * * * during the year 1886, whether the same are cultivated by me, or any one for me." This mortgage was also properly regis-

4

tered, on the 29th of January, 1886, and there is now due on the same the sum of $525.

That on the 2d day of April, 1886, said Watkins executed to J. S. Wooten & Bro. an instrument, of which the following is a copy:

"On the 15th day of October, 1886, I promise to pay Jas. S. Wooten & Bro., or order, sixty dollars for advances heretofore made to me, and hereafter to be made to me, in merchandise, by Jas. S. Wooten & Bro., (in accordance with an act entitled " An act to secure advances for agricultural purposes," ratified March 1st, 1867,) to cultivate a crop for the year 1886, not to exceed, in addition to what has been heretofore advanced to me, the sum of sixty dollars. To secure the payment of the same, I hereby constitute this a lien on the crop of corn, cotton, and other produce to be raised by or for me during the year 1886, in Duplin county, on my own lands; and for the further security, I hereby convey to the said Jas S. Wooten & Bro. the following articles of personal property : One dark bay horse mule, eleven years old ; one cow and calf, two steers, three sows and seven pigs, two buggies, one cart, farming utensils of all kinds, all of which I represent to be my own right and property, and that no other person has any claim on the same, except twenty-five dollars to John McGee. But on this special trust, that if I fail to pay said debt and interest on or before the 15th day of October, A. D. 1886, then they may sell said property, or so much thereof as may be necessary, by public auction, for cash, first giving ten days' notice at three public places in the county, and apply the proceeds of such sale to the discharge of said debt and interest on the same, and costs, and pay the surplus, if any, to me."

This was duly registered on the 6th day of April, 1886.

Watkins was not indebted to Wooten & Bro. in any amount before the execution of this instrument, but this fact was not known to the defendant.

After its execution they made advances under it to enable him (Watkins) to cultivate a crop on his own land during the year 1886, to the amount of more than $60. No advances were made before its execution, and no part of the advances made under it have been paid.

The defendant, on the 1st of December, 1886, took into his possession the crops raised by the said Watkins on his own land, in Duplin county, during the year 1886, and used the same, and refused to account for any part thereof to the plaintiffs. The crops were of the value of $95.

*Mr. W. R. Allen,* for the plaintiffs.
No counsel, for the defendant.

DAVIS, J., (after stating the case). Section 1799 of *The Code* provides: "If any person shall make any advancement either in money or supplies, to any person who is engaged in, or about to engage in, the cultivation of the soil, the person so making such advances shall be entitled to a lien on the crops which may be made during the year upon the land in the cultivation, of which the advances so made have been expended, in preference to all other liens existing or otherwise, to the extent of such advances," &c., provided an agreement therefor shall be executed in the mode prescribed.

The plaintiffs claim under such a lien duly executed and registered April 2d, 1886; the defendant claims under chattel mortgages, duly executed and registered prior to that date, and the question presented by the appeal is, whether the lien or chattel mortgages shall be preferred, as to the crop mentioned in both? It is not claimed that the plaintiffs have any right to have a prior discharge of their claim out of the personal property, other than the crop—as to that the plaintiffs hold only a chattel mortgage, subordinate to any prior chattel mortgage duly registered, for the instru-

ment may operate as an agricultural lien in part, and a mortgage in part. *Rawlings* v. *Hunt*, 90 N. C., 270.

When the statute (Act of 1866–'67, chap. —), was passed, authorizing what are known as agricultural liens, it was, I think, the general impression of the profession that only such *fructus industriales* as at common law were subject to levy under execution, or went as emblements to the personal representative, instead of to the heir, were the subject of sale as personal property, and as the act of 1844 (Rev. Code, chap. 45, §11,) excepted growing crops from levy under execution until matured, it was uncertain to what extent they could be mortgaged or sold. Some legislation was thought necessary to enable those engaged, or about to engage, in the cultivation of the soil, to procure aid in the way of supplies, and it was for this purpose the act was passed. It is now settled that an unplanted crop is the subject of mortgage. *Robinson* v. *Ezzell*, 72 N. C., 231; *Cotton* v. *Willoughby*, 83 N. C., 75; *Harris* v. *Jones*, 83 N. C., 317.

The authorities do not warrant the conveyance of an indefinitely prospective *unplanted* crop, and we think it should be limited to crops planted, or about to be planted, as the crop next following the conveyance.

As the crop, planted or unplanted is now conceded to be the subject of sale and mortgage, it is insisted that a mortgage of such a crop is to be regarded as the mortgage of any other chattel, and is valid from its registration against all other liens. This is certainly not true as against the landlord, because, answers the objector, as against him the statute, (*The Code*, §1754,) declares that the crop "shall be deemed and held to be vested in possession of the lessor or his assigns at all times," till all the stipulations in regard to the case shall be complied with, and the purchaser or mortgagee takes it, with a full knowledge of the statute, and of the rights secured to the landlord thereby; and this is a full answer in favor of the landlord.

Section 1799 of *The Code* declares that the lien for advances made to enable the cultivator of the soil to make the crop, shall, as to the crop made by the aid of such advances, be good " in preference to all other liens existing or otherwise, to the extent of such advances," upon a compliance with the provisions of the statute, the only exception being that in favor of the landlord, contained in the following section. Why does not the purchaser or mortgagee of the crop take with as full knowledge of the provisions of this section of *The Code* as of that which secures the rights of the landlord? He takes with a full knowledge that if advances shall be necessary to enable the cultivator to make the crop, and without which there would perhaps be no crop, such advances shall be a *preferred* lien upon the crop, made by reason of such advances, and that this preference shall extend to " existing " liens. All laws relating to the subject matter of a contract enter into and form a part of it, as if they were " expressly referred to or incorporated in its terms." *O'Kelly* v. *Williams*, 84 N. C., 281; *Lehigh Water Co.* v. *Easton*, 121 U. S., 391. It impairs the obligation of no contract. Land is sold under execution—there is a lien on the crop for advances—the purchaser buys in subordination to §1799 of *The Code*. *Dail* v. *Freeman*, 92 N. C., 351.

In *Herman* v. *Perkins*, 52 Miss., 813, it is said that although an agricultural lien may be junior in date to a mortgage, yet the right of the mortgagee is subordinate to the agricultural lien subsequently imposed by the mortgagor upon the crop. The statute giving the lien in Mississippi is not more absolute or imperative than ours.

In *Stone* v. *Simpson*, 62 Ala., 194, a similar construction was placed upon the agricultural lien law of that State, and it was held that, under the statute, a crop lien had "precedence over all *prior* mortgages, and all *prior* liens, except that of the landlord for rent." A similar construction has been placed upon similar statutes in New Jersey, Arkansas,

and other States. *Vreeland* v. *Jersey City*, 37 New Jersey, 574; *Case* v. *Allen*, 21 Ark., 217.

It is said that the lien in question is not in accordance with the requirements of the statute, because, by its terms, it is to secure advances "heretofore made," as well as those "hereafter" to be made, and we are referred to *Patapsco Guano Co.* v. *McGhee*, 86 N. C., 350.

The case agreed states that no advances were made before the execution of the lien, but all were made after its execution.

We think that in this respect it sufficiently complies with the statute. The plaintiffs' lien is preferred to that of the defendant, and there is error.

Error.　　　　　　　　　　　　　　　　　　Reversed.