OLIVER S. BROWN, APPELLANT, V. O. A. NEILSON ET AL., APPELLEES.

FILED MAY 22, 1901. No. 9,354.

Lease: LIEN: PROPERTY NON IN ESSE. A stipulation in a lease of a farm for a term of years, as follows: "And it is further expressly agreed and understood by and between the parties hereto, that all property of every name, character and description, belonging to said parties of the second part, that shall be on said premises or brought thereon by said second parties during the term of this lease, shall be holden as security for the payment of the rents above reserved until all be paid and the same shall be and remain a lien upon the same from year to year until said payments of the rents for said entire term have been fully discharged and paid," is ineffectual to create a lien, legal or equitable, in favor of the lessor for rents due and in arrears, on the crops grown thereafter on the leased premises and other property not *in esse* at the time and afterwards brought thereon by the lessee.

APPEAL from the district court for Sarpy county. Heard below before SLABAUGH, J. *Affirmed.*

*John P. Breen* and *Charles S. Lobingier,* for appellant.

*Duffie, Gaines & Kelby, contra.*

HOLCOMB, J.

Suit was instituted by the plaintiff below, appellant here, for the recovery of the sum of $900, alleged to be due as rental for the use of a farm occupied by defendants Neilson, appellees, as tenants under a written lease for a term of years. The rent claimed to be due was for the full year beginning March 1, 1895, and the first half of the year beginning March 1, 1896. The lease of the premises, upon which plaintiff based his right of action,

NEBRASKA REPORTS. [VOL. 61

Brown v. Neilson.

was executed October 30, 1893, and being for the term of four years, commencing on the 1st day of March, 1894. In the petition, joined with the allegations for a recovery of a money judgment, the plaintiff pleaded a certain stipulation contained in the lease which, it is averred, gave to him a lien in equity on all the property of whatsoever description on the leased premises or brought thereon and belonging to the lessees, as security for the rent due and in arrears under the terms of the lease; and prayed a decree establishing a lien upon all such property for the amount for which judgment should be rendered in the action. On plaintiff's application a restraining order was also issued enjoining the lessees from transferring or removing any of their property from the leased premises. The answer denied the right of the plaintiff to a lien on any of the defendants' property for any sum, and raised other issues not here necessary to further notice. On the trial of the case the plaintiff recovered a judgment for the amount prayed, with interest, but was denied any relief on his application to have the amount found due to be a lien on the defendants' personal property, as prayed for in his petition. From the finding and decree denying him a lien, he appeals.

The clause in the lease, which is made the foundation for the plaintiff's claim to the enforcement of a specific lien in his favor on all the property of the defendants Neilson on the leased premises, is as follows: "And it is further expressly agreed and understood by and between the parties hereto, that all property of every name, character and description, belonging to said parties of the second part, that shall be on said premises or brought thereon by said second parties, during the term of this lease, shall be holden as security for the payment of the rents above reserved until all be paid, and the same shall be and remain a lien upon the same from year to year, until said payments of the rents for said entire term have been fully discharged and paid." Under these sweeping provisions the plaintiff contends that he is en-

titled to have a lien decreed in his favor for the amount
for which he obtained judgment, on all personal prop-
erty of all kinds belonging to the lessees, which they had
belonging to them on the leased premises at the time of
the service of the restraining order, issued as aforesaid.
Just what this property is, is more or less involved in
doubt, but it is claimed by appellant that a schedule of
property and claim of exemption, filed by the lessee with
the sheriff of the county, who appears to have been about
to levy an execution thereon in another action, furnishes
sufficient evidence as to the description and identity of
the property to which his lien should attach.   The claim
of exemption was made by the lessee as the head of a
family, and filed with the sheriff after the issuance of the
restraining order in the case at bar.   In it the defendant
claimed his specific exemptions allowed him by statute,
and in addition thereto property of the value of $500, he
being, as alleged, the head of a family engaged in the
business of agriculture and having no lands or town lots.
The schedule of property showed items of personal prop-
erty ordinarily belonging to one engaged in agriculture,
such as cattle, horses, agricultural implements and house-
hold goods; also about 50 acres of growing corn and about
1,300 bushels of corn in the crib.

It is suggested by counsel for defendants that a stipu-
lation of the character under consideration can not in
equity be extended to cover and include the exempt prop-
erty of the defendant allowed by law as the head of a
family engaged in the business of agriculture, citing in
support thereof, *Vinson v. Hallowell,* 10 Bush [Ky.], 538,
and *Seiling v. Gunderman,* 35 Tex., 544.   We prefer to ad-
dress ourselves to the principal question presented by
the appeal, and that is, whether a valid lien may be cre-
ated on any property by the method adopted in this case;
and, if so, in what manner can the lien be made effective?
Whether any of the property was in existence at the date
of the execution of the lease, is doubtful.   Certain it is
that all of it was unidentified and in no way described

in the instrument, except as it might afterwards be brought on the leased premises; and for the most part the property consisted of growing corn and corn in the crib, not in existence until some time after the defendant occupied the leased premises, under the lease by which plaintiff claims.

Plaintiff's counsel, in his opening brief, concedes that the instrument conveyed no present lien on the property of the lessee afterwards raised or brought on the demised premises; but contends that the stipulation quoted should be construed as an agreement by the lessee to give a lien on all such property, after being brought on the premises, which ought to be enforced in equity in a suit to collect the rents in arrears, by a decree in the nature of specific performance, in pursuance of the familiar maxim that "equity regards as done that which ought to be done." In the reply brief by different counsel it is argued that the rule first stated is not broad enough, and that the instrument itself, and by virtue of its own force, should be treated as creating a lien or mortgage on the property, although not in existence at the time of the execution of the lease, and which attaches as an equitable lien when the property comes into being and within the terms of the stipulation, and that the lien is capable of enforcement in a court of equity. The stipulation does not comprehend, within its meaning, that the lessee will, after the property is acquired, execute a mortgage or other instrument incumbering the property for the benefit of the lessor. No original and independent contract creating a new lien can be inferred as the intention and contemplation of the parties, without doing violence to the language used. It does not purport to be an agreement to give, in the future, a lien on the property then owned by the lessees on the leased premises; but, by its own terms and provisions, the instrument evidences an attempt to establish a lien in future on property at the time not *in esse*. It is a contract, or attempt at contract, for a sale and transfer by way of mortgage, and not a contract to

give a mortgage. If it is ineffectual to create a lien on the after-acquired property, we are of the opinion that it can not, under any well recognized rule, be made the foundation for a decree in the nature of specific performance, conceding that, in a proper case, a court of equity will decree specific performance of a contract of a sale of, or to give a mortgage on, chattel property. Unless the stipulation under consideration in the instrument can be upheld as creating, in favor of the lessor, a lien, legal or equitable, on the crops grown on the leased premises, or on property brought thereon after the execution of the lease, we think it must entirely fail as having any vitality or force for any purpose. It is not argued, nor will it be seriously contended, that the clause quoted conveys any legal interest in or lien on the property of the lessee not then in existence or owned by him, but which was afterwards brought into existence and on the leased premises. The authorities are unanimous that a legal estate or interest can not be conveyed in property which has no existence. The question then is, will such an agreement create a lien of an equitable character, attaching to the property when it comes into existence and is brought within the terms of the stipulation in other respects? On this the authorites are divided. The exact nature of the contract, therefore, becomes material in arriving at a proper conclusion. Such a contract is usually defined as executory in character, requiring something further to be done in the future by the parties thereto, before a good title will pass to and be perfected in the lessor or mortgagee.

In an early case, and one that is frequently cited by the courts holding to the doctrine that property not *in esse* is not the subject of transfer by way of mortgage, it is said, regarding the nature of such a contract: "A stipulation that future acquired property shall be holden as security for some present engagement, is an executory agreement, of such a character that the creditor with whom it is made may, under it, take the property into

his possession, when it comes into existence, and is the subject of transfer by his debtor, and hold it for his security; and whenever he does so take it into his possession, before any attachment has been made of the same, or any alienation thereof, such creditor, under his executory agreement, may hold the same; but, until such an act done by him, he has no title to the same; and that, such act being done, and the possession thus acquired, the executory agreement of the debtor authorizing it, it will then become holden by virtue of a valid lien or pledge. The executory agreement of the owner, in such case, is a continuing agreement, so that when the creditor does take possession under it, he acts lawfully under the agreement of one then having the disposing power, and this makes the lien good."—*Moody v. Wright,* 13 Met. [Mass.], 17, 32.

In deciding the validity of a contract executory in character, under which a lien was claimed, this court, in an early case (*Lanphere v. Lowe,* 3 Nebr., 131, 138), citing with approval a decision of the supreme court of Massachusetts, held that a valid lien could not thus be created. GANTT, J., speaking of a stipulation in a lease of real estate similar to the one under consideration, says: "But it was an effort on the part of the defendant to create a lien, somewhat in the nature of a chattel mortgage, upon a something not *in esse.* Can a valid charge be made upon a thing not in existence? I think it can not. It is a very ancient rule of law, that a man cannot grant or charge that which he has not; and in *Jones v. Richardson,* 10 Met. [Mass.], 488, it is said that this 'is a maxim of law too plain to need illustration, and which is fully supported by all the authorities.' Bac. Abr., Grants, D, 2. *Codman v. Freeman,* 3 Cush., 309. 2 Kent Com., 703. *Head v. Goodwin,* 37 Maine, 187. *Robinson v. Macdonnell,* 5 Mau. and Sel., 228. *Chynoweth v. Tenney,* 10 Wis., *400. This doctrine is applied to mortgages of goods which may be subsequently acquired by the mortgagee; it is equally applied to sales of personal property, and rights of property.

*Chesley · v. Josselyn,* 7 Gray, 490; *Rice v. Stone,* 1 Allen, 569."

And again, after mature consideration, the doctrine enunciated in the *Lanphere Case* was approved, followed and reiterated in *New Lincoln Hotel Co. v. Shears,* 57 Nebr., 478. Speaking on the same subject, says COBB, J., who delivered the opinion of the court in *Cole v. Kerr,* 19 Nebr., 553, 555: "There is, to say the least of it, great confusion of the authorities on the point being considered, but after a careful examination of those cited on either side in this case I have reached the conclusion that as a question of law the lien of a chattel mortgage of a crop of corn not planted at the time of its execution and delivery will not attach to the corn when it comes into existence until it is seized by the mortgagee, or until, in the language of a member of the court in the case of *Holroyd v. Marshall,* 10 H. of L. Cases, 191, 'a new intervening act.' Until then it remains a mere license, and until acted upon it conveys neither a lien nor a right of property which the mortgagee can assert against a purchaser or execution creditor of the mortgagor."

The authorities appear to be almost, if not entirely, unanimous in support of the rule announced in the case last cited, to the effect that no legal estate or interest in or lien upon property, not in existence at the time of the execution of the instrument, passes to the grantee therein named by virtue of the instrument itself; and that the agreement, purporting to convey the property or give a lien on such property, when not in existence, is executory in character, in the nature of a license or continuing agreement requiring a further and new act in order to transfer any legal title or lien to the grantee or mortgagee. In addition to the authorities cited in the two decisions of this court, heretofore quoted from, the following are directly in point: *Chapman v. Weimer,* 4 Ohio St., 481; *Long v. Hines,* 40 Kan., 220; *Lunn v. Thornton,* 50 Eng. C. L. [1st Man., Gr. & S.], 379; *Williams v. Briggs,* 11 R. I., 476, and cases therein cited.

The more difficult question, as heretofore stated, arises with respect to an equitable lien being .thus created, which attaches to the property when it comes into being and title thereto is acquired by the grantor, and regarding which there. exists an irreconcilable conflict in the authorities. It is contended by counsel for plaintiff in the case at bar, and held by many respectable authorities, that notwithstanding the property, on which he seeks a lien, was not *in esse* when the lease was executed, that after the crops were raised on the demised premises, belonging to the lessor, and still remaining thereon, a lien in equity attached thereto, the enforcement of which should be permitted by resort to and the application of equitable rules and principles. The same argument, of course, applies to the other personal property afterwards acquired and subsequent to the execution of the lease brought on the premises. What counsel contends for amounts substantially to the enforcement of a landlord's lien, not only on the crops grown on the leased premises, but also on all the personal property of the lessee brought thereon after the execution of the lease, without any statutory authority therefor. This is sought to be accomplished by the very general terms of the stipulation in the lease heretofore quoted. It is admitted that no legal title passed when the lease was signed, and that there then existed no property on which a lien could operate. But it is said that the stipulation will in equity establish what in law it is incapable of doing, that is, although under the law no valid interest or lien passes to the lessor, yet an equitable lien arises in his favor and attaches to the property when it comes into existence; that, notwithstanding it is void in law—without a new act—it is valid in equity; that, by the application of the equitable doctrine contended for, a valid equitable lien may be created, not only on the crops raised on the leased premises for the year in which the lease was executed, but also as many years thereafter as the term of the lease covers—two, five, ten, or a quarter of a century;

and that such lien covers not only the crops raised on the premises, but as well all other property acquired and brought thereon by the lessee. We do not think this can be accomplished by the application of any sound equitable principle.

In the view of the case now under consideration, the expression of COBB, J., in *Cole v. Kerr, supra*, becomes pertinent: "Soil alone," says he, "does not produce crops of corn in this degenerate age, if it ever did. It now requires, in addition to soil and seed, labor both of man and beast. So that the proposition that a sale or mortgage of a crop of corn not yet planted carries with it a property in or lien upon such crop, to attach and come into efficacy without 'a new intervening act,' upon the crops coming into existence, carries with it the proposition that a man may mortgage his labor to be performed —something which I never heard contended for in this country, but which is a right which, under the name of peonage, is recognized in our sister republic to the south of us."

In *New Lincoln Hotel Co. v. Shears, supra*, it was contended by those arguing for the validity of a clause in a lease, similar in its general terms to those in the present case, that the subsequent mortgagees of the property, who it is admitted had notice of the provisions for a lien in the lease, could not, therefore, question its validity. To this it is observed by RYAN, C.: "We cannot see that the validity of the provision of the lease is affected by this consideration. Whether or not a chattel mortgage or its equivalent can be made so as to affect future acquired property, is a question entirely dependent upon general principles independent of statute." In *Steele v. Ashenfelter*, 40 Nebr., 770, POST, J., speaking for the court on the same subject, says: "It will be seen from this statement that the question presented is, whether, as against Hale, the execution plaintiff, the mortgage includes the after-acquired property of the mortgagor. The question thus presented is one upon which the authorities are by

no means harmonious. The doctrine of *Holroyd v. Marshall*, 10 H. L. Cases [Eng.], 191, has been recognized by many of the courts in this country. In those jurisdictions the rule is that while at law a mortgage of after-acquired property confers no rights as against purchasers and attaching creditors, in equity it is effectual to charge the property, when acquired by the mortgagor, with an equitable lien, which will prevail not only as against the latter, but also as against attaching creditors. The distinction above noted between the rule at law and in equity can of course have no place under our · practice where the two remedial systems are blended into one. Therefore, if the corporation, for which the plaintiff stands, by its mortgage acquired a lien which is enforceable in equity as against the execution plaintiff, such lien is available to him in this action. If the question was an open one in this state, the cases which recognize the rule in *Holroyd v. Marshall, supra,* would be entitled to great consideration, but we regard it as settled by the case of *Cole v. Kerr,* 19 Nebr., 553, in which it is distinctly held that a mortgage of a crop to be planted conveyed no lien upon crops subsequently raised by the mortgagor as against judgment creditors of the latter."

Says the supreme court of Wisconsin, in *Chynoweth v. Tenney,* 10 Wis., 341, 346: "But it is contended further that, although this interest may be inoperative at law, yet that it was effectual to establish an equitable lien, and the decision of Judge Story, in *Mitchell v. Winslow,* 2 Story, 630, and the authorities by him cited, are relied on to support this position. But we think the doctrine of this case had been so fully denied by subsequent cases that it can not be considered as law. [Citing a number of cases.] And in *Congreve v. Evetts,* 10 Ex. R., 307, Parke, B., says that such a conveyance 'gave no legal title, nor even equitable title, to any specific goods.' Other cases, to the same effect, might be cited, but we deem it unnecessary." The rule adopted by the Wisconsin court, just cited, has been approved and followed in

*Farmers' Loan & Trust Co. v. Commercial Bank*, 11 Wis., 215; *Single v. Phelps*, 20 Wis., 419; *Mowry v. White*, 21 Wis., 417; *Lemson v. Moffat*, 61 Wis., 153, and other cases. See, also, *Hutchinson v. Ford*, 9 Bush [Ky.], 318, and *Blanchard v. Cooke*, 144 Mass., 207.

*Loftin v. Hines*, 12 S. E. Rep. [N. Car.], 197, is a case involving the validity of a lien by virtue of an instrument in the nature of a mortgage on crops to be grown two or three years in the future, in which it is stated in the syllabus: "A mortgage executed in 1888 on crops to be cultivated during 1889, 1890, and 1891, conveys no title, legal or equitable, which can be enforced by claim and delivery." And in the opinion, says Clark, J., voicing the views of the court: "Unless said mortgage conveyed to the plaintiff either a legal or equitable title to the crop of 1889, the plaintiff can not recover. It is held by Davis, J., in *Wooten v. Hill*, 98 N. C. 52, 3 S. E. Rep. 846: 'The authorities do not warrant the conveyance of an indefinitely prospective unplanted crop, and we think it should be limited to crops planted, or about to be planted, as the crops next following the conveyance;' that is, the crops of the year current when the mortgage is executed. This case is to the same purport as the opinion by Pearson, C. J., in *Mastin v. Marlow*, 65 N. C. 695, and it has been cited and approved by Smith, C. J., in *State v. Garris*, 98 N. C. 733, 4 S. E. Rep. 633; by Shepherd, J., in *Smith v. Coor*, 104 N. C. 139, 10 S. E. Rep. 466; and by Avery, J., in *Taylor v. Hodges*, 105 N. C. 344, 11 S. E. Rep. 156. We think the mortgage was invalid as a conveyance of title, either legal or equitable, to the crop of 1889, and the proceeding by claim and delivery must fail." It seems in that state that a valid mortgage may be executed on unplanted crop for the current year.

In an early English case the rule is stated as follows: "That, if the agreement was to mortgage certain specific furniture, of which the corpus was ascertained, that would constitute an equitable title in the defendant so as to prevent its passing to the assignees of the insolvent,

and then the assignment would make that equitable title a legal one; but, if it was only an agreement to mortgage furniture to be subsequently acquired—to give a bill of sale at a future day of the furniture and other goods of the insolvent—then it would cover no specific furniture, and would confer no right in equity." *Mogg v. Baker*, 3 Mees. & Wels., 194.

The natural and logical deduction to be. made from the authorities above cited is that the agreement under which the plaintiff claims, being executory in its nature and not fully executed, is insufficient to pass any legal interest in, or equitable lien on, the property on which the lien is claimed, because not then in existence, and that the trial court committed no error in denying the plaintiff any relief by way of enforcement of a specific lien thereon for the amount for which he obtained judgment. Our court has long been committed to this doctrine, and there appears no sufficient reason to depart therefrom. ·Our Code has blended the remedies at law and in equity, both of which are now to be administered by one form of action, denominated a civil action. It is a familiar maxim that "equity follows the law." Applying this maxim, it is frequently held that a contract imposing no legal obligation can not be enforced in equity. Snell, Principles of Equity, p. 17. This rule, of course, having its proper application and limitations. The contract in the present instance is not the result of a mistake or failure of the parties to correctly express their intentions in the stipulation creating the alleged lien. It amounts only to a mere license, which to become effective for the purpose of creating a valid lien requires a change of possession of the property when or after acquired. Until a new act intervenes, no sufficient title passes to the lessor which he can enforce at law or in equity, nor is he entitled to relief by the application of any recognized rule of equity, under the doctrine of specific performance.

In the examination of the case we have not been un-

mindful of the authorities to which our attention has been directed, as well as many others examined in our consideration of the questions involved, in support of the plaintiff's contention that the stipulation creates in his favor an equitable lien which ought to be recognized. This line of cases is not in harmony with the doctrine of this court, as heretofore expressed, and must, for that reason, be disregarded as authority. The precedents which we have heretofore established should, in our judgment, be followed and adhered to.

It is claimed by appellant that the affidavit and claim of exemption made by the lessee, heretofore referred to, established a ratification and affirmation of the lien of the plaintiff under his lease. The affidavit was made in another case and in nowise was related to, or connected with, the contract of lease, except as it referred to it as being a paramount lien on the property. It was made and filed with the sheriff holding an execution to save the property from levy on the ground that it was exempt under the statute. After claiming his specific exemptions, which were enumerated, the appellee stated that certain growing corn, describing it, and a quantity of corn in the crib, was claimed under the statutory exemption of property of the value of $500, the affiant not being the owner of lands or lots, and that all of said property (i. e., the property claimed under the exemption of $500 in value) "is incumbered by and subject to a lien for accrued rent due from me for the premises upon which the said corn was raised and is located, to the owner of the land in the sum of $900, and that the same is an incumbrance and a lien upon all of said property prior and paramount to any claim for exemptions which I now assert or claim against it. That the incumbrance and lien for said rent upon said property was created and established by myself and wife signing a written contract to that effect long prior to the levy of the execution levied by you on said property." While the affidavit was, perhaps, evidence of the construction the defendant

put upon the contract of lease, it in no way changes the legal relations of the parties, and so far as the statement, that a lien existed on the property by virtue of the stipulation in the lease, is concerned, it, at most, was only his opinion of its legal force and effect, which would not alter or change the principles of law involved and applicable under the issues joined in the present action. The lien referred to could only be perfected by a new act, which had not then been performed.

The judgment of the district court is

AFFIRMED.